Case Nos. 14-4156

# In the
# United States Court of Appeals
## for the Sixth Circuit

ELAINE PELZER, *et al.*
*Intervenors - Appellants*

v.

MARTHA VASSALLE, *et al.*
*Plaintiffs - Appellees,*

MIDLAND FUNDING LLC, *et al.*
*Defendants - Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

**BRIEF OF PLAINTIFFS-APPELLEES
MARTHA VASSALLE, JEROME JOHNSON
HOPE FRANKLIN, ANDREA BRENT
AND CLASS MEMBERS**

Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone: (419) 624-3000
Facsimile: (419) 624-0707
*Counsel for Plaintiffs - Appellees*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Sixth Cir. R. 25, the Plaintiffs-Appellees, Martha Vassalle, Jerome Johnson, Hope Franklin and Andrea Brent make the following disclosures:

1.    Are said parties a subsidiary or affiliate of a publicly owned corporation?

   NO.

   If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:


2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   NO.

   If the answer is YES, list the identity of such corporation and the nature of the financial interest:


May 21, 2015                            /s/Dennis E. Murray, Sr.
(Date)                                  (Signature of Counsel)

# <u>TABLE OF CONTENTS</u>

Table of Authorities ..................................................................................iv

I.    Statement in Support of Oral Argument..................................1

II.   Jurisdictional Statement...............................................................1

III.  Statement of Issues  ....................................................................1

IV.   Statement of the Case ................................................................3

V.    Summary of Argument ................................................................6

VI.   Argument ......................................................................................12

    A. The Value, Usefulness and Viability of State Law Unfair and
       Deceptive Action Claims............................................................12

          1. There is Nothing Irregular in Dismissing All Related Claims
             in Settlement that are Based Upon the Identical Conduct of
             the Claims Being Settled..................................................12

          2. The Speculative Value of any Identical, Related State Law
             Claims was Thoroughly Researched and Considered in the
             Negotiation of the Revised Settlement Agreement.......................13

          3. The Questionable Viability of Class Members' Pursuing a
             State Law UDAP Claim.....................................................19

          4. State Law UDAP Claims Cannot Produce the Results
             Asserted by Appellants ..................................................20

    B. The Appellants' Focus on the Vacation of Judgments as a
       Significant Factor in the Settlement of this Case .....................27

          1. Intervenor-Appellants Have Not Explained How the Class
             Mechanism Could Be Used for Mass Vacatur of Judgments ........27

2. State Law Procedural Concerns Affecting Actions to Vacate Judgments ................................................................................... 28

C. The Validity and Purpose of the Stipulated Injunction Accompanying the Settlement ................................................... 31

D. The Adequacy of the Class Representatives ............................................ 37

E. The Reasons the State Attorneys General Objected ................................ 40

F. The Perceived Flaws in the Class Notice ................................................. 44

G. The Use of a Quick Pay Fee Provision in the Settlement Agreement ....................................................................................... 49

VII. Conclusion ............................................................................................ 51

Certificate of Compliance ............................................................................ 53

Certificate of Service  ................................................................................. 54

Appellees Designation of Relevant District Court Documents ............................... 55

# TABLE OF AUTHORITIES

## Cases

*Abby v. Paige*, 2013 WL 141145 (S.D. Fla. 2013) ...................................24

*Aiken v. City of Memphis*, 37 F.3d 1155 (6th Cir. 1994) .........................34

*Alonso v. Blackstone Financial Group LLC*, 2013 WL 3992122 (E.D.Cal. 2013) ...................................................................................................24

*Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011) ............16

*Bradshaw v. Hilco Receivables, LLC*, Case No 10-CV-00113 (D.Maryland, Feb. 10, 2012) ......................................................................................13

*Brown v. Enter. Recovery Sys.*, 2013 Tex. App. LEXIS 10658 (Tex. App., Aug. 22, 2013) .....................................................................................25

*Camacho v. Automobile Club of Southern California*, 48 Cal. Rptr.3d 770 (Cal. 2006) ...........................................................................................26

*Carson v. American Brands*, 450 U.S. 79 (1981) ...................................34

*Deutsche Bank Nat'l Trust Co. v. Belizaire*, 2011 Conn. Super. LEXIS 1842 (Conn., July 13, 2011) ..........................................................................25

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .............22

*Dowell v. Applegate*, 152 U.S. 327 (1894) ............................................47

*Flores v. Rawlings Co., LLC*,  177 P.3d 341, 357 (Haw. 2008) .............26

*Gray v. Suttell & Assocs.*, 2012 U.S. Dist. LEXIS 643885 (E.D.Wash., March 28, 2012) ...................................................................................25

*Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342 (10th Cir 2000) ........46

*Hamid v. Stock & Grimes, LLP*, 876 F.Supp. 2d 500 (E.D.Pa. 2012) ....................24

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985) ......................................................46

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277 (3d Cir. 2005) ............................................................48

*In re Gilead Sciences Sec. Litig.*, No. C-0304999 (N.D.Cal. Nov. 5, 2010) ..........51

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009) .......................51

*In re MASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465  (S.D.N.Y. 1998) ..................................................................................................................51

*In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) .......................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827 (N.D. Cal. Dec. 27, 2011) ..........................................................................................51

*Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822 (8th Cir. 1980) ...............................................................................................46

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ......................................................26

*Moritz v. Daniel N. Gordon, P.C.*, 895 F.Supp. 2d 1097 (W.D.Wash. 2012).........25

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986).....................................................46

*Pac. R.R. v. Ketchum*, 101 U.S. 289 (1979)...........................................................32

*Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885 (Wash. 2009).........................26

*People v. Nationwide Asset Servs., Inc.*, 888 N.Y.S.2d 850 (N.Y. 2009) ..............25

*Plummer v. Chemical Bank*, 668 F.2d 654 (2nd Cir. 1982) ....................................34

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1922)........................................... 21, 22

*Sansom Comm. By Cook v. Lynn*, 735 F.2d 1535 (3d Cir. 1984)............................32

*Schmidt v. Lessard*, 414 U.S. 473 (1974) ..............................................................33

*SEC v. Dollar General Corp.*, 378 F. Appx. 511 (6th Cir. 2010) ..........................34

*Shy v. Navistar Intern. Corp.*, 701 F.3d 523 (6th Cir. 2012)...................................34

*Stoll v. Gottlieb*, 305 U.S. 165 (1938) ............................................................ 46, 47

*Stone v. Wayric Services, Inc.* Case No. 10-cv-00484 (D.Maryland,
    April 1, 2013) ....................................................................................................13

*Stotts v. Memphis Fire Department*, 679 F.2d 541 (6th Cir. 1982).........................33

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ........................................32

*The PMI Group, Inc. Sec. Litig.*, 3:08-cv-01405 (N.D. Cal. Dec. 20, 2010) ..........51

*Turner v. NFL (In re NFL Players' Concussion Injury Litig.*), 2015 U.S. Dist.
    LEXIS 52565 (E.D. Pa. Apr. 22, 2015) ............................................................48

*United States v. Armour & Co.*, 402 U.S. 673 (1971) .............................................34

*United States v. City of Miami*, 664 F.2d 435 (5th Cir. 1981)................................34

*United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975).......................33

*Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348 (1920) ........................47

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)...........................13

*Waste Mgmt. of Ohio v. City of Dayton*, 132 F.3d 1142 (6th Cir. 1997)................34

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ............................................32

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ...................................30

*Winemiller v. Worldwide Asset Purchasing LLC*, Case No. 09-cv-2487
    (D.Maryland, Aug. 27, 2012) ............................................................................13

*Yellowpine Water User's Assn. v. Imel*, 105 Idaho 349 (1983)...............................17

## Statutes

15 U.S.C. § 1692k(a)(2)(B) ...................................................................8

28 U.S.C. § 1257(a) ...........................................................................21

28 U.S.C. § 1291 .................................................................................1

Alaska Stat. § 45.50.531(a) ...............................................................16

Ark. Code Ann. § 4-88-101 ...............................................................19

Idaho Code §§ 48-603 ........................................................................16

Idaho Code § 48-608(1) ......................................................................16

M.C.L. § 339.915(e) & (f) ..................................................................16

M.C.L. § 339.916 ...............................................................................16

Minn. Stat. §§ 8.31. 332.39 ................................................................30

Va.Code § 59.1-204(A) .......................................................................16

## Rules

Civ.R. 60(B) ........................................................................................24

Fed.R. Civ.P. 65(d)(1)(B), (C) ...........................................................33

Fed.R.Civ. P. 65(d)(1)(A) ...................................................................33

Fed.R.Evid. 803(6) .............................................................................42

## Other Authorities

*The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1643 (2009) ................51

## I.    STATEMENT IN SUPPORT OF ORAL ARGUMENT

Martha Vassalle, Jerome Johnson, Hope Franklin and Andrea Brent, on behalf of themselves and the similarly situated class members (Plaintiff-Appellees), request oral argument.  Oral argument would be of assistance because the procedural history and the merits of the settlement are complex.

## II.    JURISDICTIONAL STATEMENT

This is an appeal from a final order and judgment approving a class action settlement.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    STATEMENT OF ISSUES

Appellants would seek reversal of an order approving a nationwide class action resolution. This is the second time a settlement agreement has been before this Court in this litigation.

Appellants list three issues presented for review:

1. Appellants challenge the ability of the District Court to include in its final Judgment Entry, an Order based upon a stipulation in the parties' Revised Settlement Agreement, described as an injunction. This injunction dictated that the Defendants be required to comply with certain agreed-upon mandatory changes in their business practices for a period of 5 years. The District Court's Order was not in error, as will be hereinafter demonstrated.

2. Appellants assert that the District Court did not comply with this Court's mandate when approving the new settlement. The resolution of this issue necessarily revolves around the correct interpretation of several statements made in this Court's previous decision, in conjunction with an analysis of the availability of certain additional legal remedies to class members. Appellees and the District Court took considerable steps to research the legal questions and to review this Court's prior opinion to arrive at a Revised Settlement that would be, and is, in compliance.

Appellants contend that additional compensation must be provided to the Class.  This, despite the fact that the state law claims that the Appellants contend are lucrative are not available to the majority of class members and they *do not* afford any substantial additional relief. Appellants fail to recognize that the reasons that this Court previously held that the Named Plaintiffs were inadequate have now been resolved as a part of the Revised Settlement. They allege no additional value in the changes to Defendants' business practices as implemented pursuant to the injunction ordered by the Court below, despite the fact that Defendants are now bound to adhere to the orders of a court-appointed Special Master for a period of five years. Finally, Appellants contend that the Class Notice failed to inform class members of a non-existent barrier

to their ability to challenge judgments; and a prior holding of this Court that the Appellants misconstrue, regarding the adequacy of the compensation that Class Members will receive.

3. Appellants contend that it is an abuse of discretion for the District Court to approve a settlement without including in the opinion a discussion of all of the objections and the timing for the payment of attorneys fees, despite the fact that the District Court represented that it had read and taken into consideration all of the objections, data and other information presented to that Court.  Appellants also include in this issue whether the District Court should have included in its opinion a discussion that the settlement restricted the use of state law remedies that Appellants assert impede class members from setting aside judgments that were fraudulently obtained. This last issue is moot, as Plaintiffs-Appellees will demonstrate that the Appellants have no basis in law to make such contention because there are no state law remedies that can be used to set aside judgments that may have been fraudulently obtained.

## IV.    STATEMENT OF THE CASE

In order to understand the positions of the parties and the nature of the settlement agreement at issue, it is important to recognize what this case is about, and more importantly, what the case is *NOT* about. This is a case in which a debt

collector, Midland Credit Management, Inc. ("Midland") used form affidavits, stating that they were made on "personal knowledge", when in reality the Midland employee signing the affidavits had no such knowledge. The substance of the cause of action asserted on behalf of the class was that the language of the form affidavits, asserting personal knowledge, was deceptive and a violation of the Fair Debt Collection Practices Act ("FDCPA"). A separate cause of action under the Ohio Consumer Sales Practices Act ("OCSPA") was initially brought asserting that the violation of the FDCPA was also a violation of the OCSPA. This state law cause was brought only on behalf of an individual plaintiff, as there is no provision to maintain a class action under the facts of this case under Ohio law.

The District Court agreed with Plaintiff, Andrea Brent, and granted summary judgment in her favor, holding that the language of the affidavit was an FDCPA and OCSPA violation. The District Court further held that there were no actual damages caused by the affidavit language. Thus, this became a proceeding where the Class Members were to be availed of statutory damages only.

This case *is not* about fraudulently obtained judgments. Instead, Class membership is defined as those individuals who were sued by Midland where an affidavit asserted personal knowledge and was used as a part of the initial mechanism to collect a debt. Appellants' statement, that Defendants obtained judgments against all 1.44 million class members is untrue. The same holds for

Appellants' further statement that the original settlement agreement required each class member to waive the right to set aside judgments taken against them by the Defendants. It is simply not true. In fact, this appeal is driven by many such untrue assertions by Appellants, which they seemingly utilize to generate feelings of alarm and outrage, but with no basis. Appellants have been successful in communicating this misinformation to others who have joined with them.

It certainly may be inferred that Midland obtained judgements against some class members. But that is not now; and it has never been a part of the class definition. In fact, Midland obtained judgments against only two of the four named Plaintiffs. On the other hand, as to the four Appellants, only Elaine Pelzer had a default judgment against her because she did not answer Midland's Complaint. (*Vassalle* record Doc. # 216-2 p. 15). The Complaints filed against Gular Probst and Raul Osorio were dismissed. *Id.*; *Vassalle* record Doc. # 266 pp. 20, 23. No information is contained in the record indicating the status of any collection action against Appellant Dianne Frederick. Many class members have no interest in vacating a judgment as none was taken against them. Not only are those as to whom Midland may have obtained a judgment not a part of the class definition, but additionally Appellants have never supplied any data to suggest that they exist in any significant number.

Appellants and their counsel have filed a competing class actions in Michigan. Two of the Michigan Appellants objected to an initial settlement reached in this case, which was appealed to this Court. That initial settlement was remanded by this Court and was thereafter renegotiated by the parties to address the concerns earlier raised by this Court. These changes are discussed in detail in Section V below.

Despite the changes made in the revised settlement agreement, Appellants remain unsatisfied. Appellants interpret the previous Sixth Circuit Opinion and the substantive law related to the class members' claims and concerns in an entirely different manner than do Plaintiff-Appellees. These diverging legal interpretations have made it impossible to reach a common ground in resolution. In addition to the disagreements on the reach of the law, the differences in the manner in which the Appellees and Plaintiff-Appellants view the basic substance of what the case is about, has created a large divide with differing opinions as to what is important in crafting a fair and adequate settlement.

## V.    SUMMARY OF ARGUMENT

This Court previously reviewed and reversed the District Court's order approving the parties' prior attempt to settle this matter. Upon remand, the parties carefully reviewed and considered the concerns expressed by this Court to revise the settlement. The Revised Settlement Agreement resolves the deficiencies that

were noted by this Court in the parties' earlier settlement agreement. However, Appellants, who were Objectors to the settlement in the court below, cannot be satisfied.  For each problem resolved, they allege additional reasons to expand prior arguments in objection.

In rejecting the original settlement, this Court stated that the settlement was unfair to the unnamed class members due to "the disparity in the relief afforded under the settlement to the named plaintiffs". This Court looked at the fact that Midland agreed not to pursue further debt collection action on the debts of the Named Plaintiffs and the fact that the four Named Plaintiffs would share an $8,000 incentive payment. These two factors, when compared with the payment of $17.88 that would be received by Class Members from the settlement fund, provided the class members only perfunctory relief.  The one-year injunction, requiring Midland to change the language used in the affidavits and alter its policies under the oversight of a Special Master, was of little additional value to the class members, thus rendering the settlement unfair.

In crafting the Revised Settlement, the Named Plaintiffs' debts were not released by Midland.  To meet the concerns of this Court, the parties changed the agreement to now specifically allow every class member to use the fact that Midland's affidavits falsely stated they were made on personal knowledge, to challenge the validity of any judgment that Midland had procured; and, *in addition*,

to use the affidavits as a defense to any debt collection action. This Court had reasoned that the class members' "most important interest" was "the ability to use the false affidavits against Midland to contest their debts in court." The Revised Settlement preserves this "most important interest" for Named Plaintiffs and Class Members alike, thus, putting them all on the same footing.  Every class member may now use the fact of a faulty affidavit for *any purpose* including to vacate a judgment, if that relief is otherwise available.

Even though this Court did not reach the question of the appropriateness of the incentive awards, the Revised Settlement reduces the awards to $1,000 each, the sum that is available by statute under the FDCPA, 15 U.S.C. § 1692k(a)(2)(B). An expanded stipulated injunction was adopted by the District Court. The Special Master reviewed the language of all affidavits used by Midland and mandated specific changes to ensure that there are no false assertions of personal knowledge or other problem language present. The procedures for generating the affidavits and verifying the accuracy of the information contained in them were also studied by the Special Master to confirm that the affidavits accurately report what is in Midland's records.  Midland is bound to use the affidavit procedures and language consistent with the Special Master's orders for a period of five years. These changes made in the Revised Settlement addressed and resolved the fairness issue.

Appellants skirt the issue of fairness, and now erroneously argue that the District Court's approval of the enhanced Stipulated Injunction "lacked any apparent jurisdictional or predicate basis." Appellants also claim that, despite the exception in the release now allowing Class Members to use the falseness of the affidavits to challenge judgments and in defense of collection actions, that the Revised Settlement "failed to give due consideration to the class members' 'most important' interest". This later assertion is based upon a novel argument that the Revised Settlement will not permit the Class to vacate judgments by filing state law consumer unfair and deceptive practices claims, or by filing class actions, two remedies that are likely unavailable to the Class Members, in all events, under the current state of the law. The Revised Settlement now allows every class member the right to seek to vacate any judgment by asserting the falsity of the affidavit language by any methods that may be allowed.

This Court also rejected the original settlement for two considerations dealing with the superiority aspect of the class. *First,* and as articulated by this Court, the Class Members have an interest in individually controlling the defense of Midland's state court judgments against them, and would have lost a crucial defense under the original settlement. *Secondly*, this Court stated that class members could have collected damages under state law claims that would exceed

the value of the monetary relief in the settlement, on the representations made by some Objectors to the settlement.

The Revised Settlement now preserves the right of each Class Member to use the affidavit as a defense of Midland's state court judgments.  Class Members no longer need to opt out of the settlement in order to file their own action to vacate a judgment. They *still* may also opt-out, however.

The parties further explored in detail exactly what damages would be available under state law claims. The conclusion reached, after thoroughly researching and briefing the issue, was that although there are a handful of states that have consumer protection statutes that provide for statutory damages, the majority do not. Those states with statutes that might provide some additional damages monies do not provide a significant amount. Furthermore, most, *if not all*, class members would not be able to file a claim under these state statutes, because their claims are well outside of the limitations periods.  Upon consideration of these facts, no changes were made in the Revised Settlement to address the state law claims that would be released in the settlement.

Appellants continue to insist that this Court's single sentence stating that class members *could* have collected more damages under state law claims than in the settlement, be read to mean that they *would*. Appellants now argue that, despite the in-depth analysis of state law conducted as part of the Revised Settlement, that

the settling parties were mandated to accept this Court's statement as an undisputed fact that the state law claims are so valuable they preclude settlement. Appellants do not address the fact that most, if not all, class members would *not* be able to pursue a state claim and would therefore receive nothing if the Revised Settlement were not to be approved; nor do they offer any additional analysis of the state laws to support their contentions.   In fact, there are 139,941 Class Members who sought the class benefits in 2011 and 130,304 Class Members who have sought the revised Settlement Agreement benefits in 2014.   Appellants are simply trying to keep their own competing class action alive at the expense of these Class Members who have never been in any position to take advantage of all of the alleged "benefits" that the Appellants argue for.

Appellees have preserved Class Members' "most important interest" through the Revised Settlement and all Class Members are treated equally. The Named Plaintiffs now have the same interests as the unnamed Class Members. Although Appellants make well-worded entreaties to attempt to convince this Court that they have compelling reasons to reject the settlement, these arguments are not based upon any accurate analysis of legal theories and they lack any substance. Several common themes dominate Appellants' arguments and these are addressed below. Once the inaccuracy of Appellants' contentions are understood, the inadequacy of Appellants' arguments becomes apparent.

## VI.   ARGUMENT

Appellants make impassioned arguments as to why they contend that the Revised Settlement should be set aside.  These arguments are facially appealing. In fact, Appellants have convinced Amici and some Attorneys Generals to accept their interpretation of the Revised Settlement. However, these arguments are based upon faulty and inaccurate legal contentions which fail to withstand scrutiny. These Plaintiffs-Appellees conclude that it would be more efficient to identify several of their faulty assertions, upon which Appellants base their larger arguments, than to directly address each assertion.  Once it becomes clear that the foundation, upon which the Appellants have built their arguments, is not true, the infirmity of all of their contentions becomes apparent.

### A. The Value, Usefulness and Viability of State Law Unfair and Deceptive Action Claims.

#### 1. There is Nothing Irregular in Dismissing All Related Claims in Settlement that are Based Upon the Identical Conduct of the Claims Being Settled.

Settlement releases, as a matter of course, generally release all claims that are based upon the same factual situation as the claim settled. It would be inconceivable that a defendant would agree to settle a case to resolve a federal cause of action, while, at the same time, allowing each class member the ability to bring a state law cause of action for the exact same alleged violation. Settlement should end the litigation, not act as a springboard to generate additional ongoing

claims for the same act using alternate legal theories.  Even the settlements brought to the attention of the District Court that were represented as superior include such provisions prohibiting continuing litigation.[1] (*Vassalle* record #249-1 p. 16).  Any Class Member that did not desire to release state law causes of action had the opportunity to opt out and to pursue their individual claims.

> **2. The Speculative Value of any Identical, Related State Law Claims was Thoroughly Researched and Considered in the Negotiation of the Revised Settlement Agreement.**

When this Court reviewed the superiority factor of the initial class action settlement, the monetary value of the state law claims was addressed in a single sentence: "the class members could have collected damages under state law claims that would exceed the value of the monetary relief in this settlement."  *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 758 (6th Cir. 2013).  This conclusion was

---

[1] See *Winemiller v. Worldwide Asset Purchasing LLC*, Case No. 09-cv-2487 (D.Maryland, Aug. 27, 2012) Doc. # 117 (Class Members "are forever barred and enjoined from asserting any of the Released Claims in any court or forum whatsoever"); *Stone v. Wayric Services, Inc.* Case No. 10-cv-00484 (D.Maryland, April 1, 2013) Doc. #110-1 ("'Released Claims' shall mean any and all claims, causes of action suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law (including the FDCPA), state law (including the MCDCA or the MCPA), common law, territorial law, or foreign law right of action or of any other type or form (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims)"); *Bradshaw v. Hilco Receivables, LLC*, Case No 10-CV-00113 (D.Maryland, Feb. 10, 2012) Doc. # 66-1 (Plaintiffs released "all causes of action, suits, claims and demands, in law or in equity, for damages, statutory damages, expenses, costs, and counsel fees arising out of the claims alleged or that could have been alleged in the complaint in any manner").

apparently based upon the representations made by some Objectors, alleging that the remedies available to class members in four identified states, and thus all other states by extrapolation, could exceed the amount of the payment to the class under the settlement. Although the Plaintiff-Appellees disputed the validity of the Objectors interpretations of the few statutes they actually discussed, this Court, without further discussion, accepted the Objectors' representations as fact.

On remand, the settling parties conducted and briefed a thorough analysis of the state law remedies that might be available to the class members. The very question of the *amount of monetary relief* that would be available to class members in all of the states was the issue that was researched and briefed in detail. (See *Vassalle* record #216 - Defendants' Brief Pursuant to August 30, 2013 Status Conference Order; #220 - Response of Certain Previous Objectors on State Law Claims; #224 - Defendants' Reply to Objectors' Brief; and #225 - Class Counsels' Analysis of the State Law Causes of Action Post Remand).

Upon the record now established (a record that was not available to this Court when it issued its prior opinion) Class Counsel's conclusion that, even though there is some *potential* additional relief available to some class members under some states' laws, there is no actual ability for state-wide class actions to provide any *substantial additional* relief under debt collection statutes or state unfair or deceptive acts or practices (UDAP) statutes, such as to alter the fairness

of the settlement for the class as a whole, when combined with the individual right of opt-out.

Contrary to the representation made by Appellants, the settling parties and the District Court did not ignore or reject a mandate of the Court by undertaking a review of the law to assist in ascertaining what value to place upon the state law claims. While Appellants continue to insist that there should have been additional monetary relief available to the class for these claims, their approach would still have the parties making this decision in a vacuum, with no facts to support it. It was necessary to make an analysis of the law to understand whether or not the settlement amount was fair.

Appellants contend that when this Court described the original settlement payment to each class member as *de minimis* that means that the only conceivable way the settlement would be adequate would be to increase the value of the settlement payout; or to allow class members to pursue additional state law claims. However, what Appellants *fail to* mention is that this Court actually stated that the payment was *di minimis* "in comparison with the now-forgiven debt of $4,516.57 owed by Brent." This comparison was made while the Court was considering the "preferential treatment" of the named Plaintiffs, *not* in the analysis of the actual amount to be received by each class member.

In this appeal, Appellants only mention, in passing, the statutes of two states, Michigan and Virginia. Misrepresentations used in connection with collecting a debt could constitute violations of the Michigan Occupational Code, M.C.L. § 339.915(e) & (f). Appellants are correct in the statement that statutory damages of $50.00 could be awarded to a Michigan consumer who had commenced an action. M.C.L. § 339.916. On the other hand, however, the Virginia Consumer Protection Act is a state statute that mandates that there be *actual* damages before there can be any recovery. Va.Code § 59.1-204(A). Without *actual* damages, a Virginia objector would collect nothing under that state's laws.

Likewise, the substantial relief asserted by Appellants would not be available for residents of other states. For example, Alaska Stat. § 45.50.531(a), grants a private right of action only to a person who purchases or leases goods or services and thereby suffers an ascertainable loss as a result of another person's act or practice. Maine also limits an action to a person who purchases or leases goods, services or property and "Maine courts have consistently read the private right of action provision of the UTPA narrowly", requiring that a plaintiff suffer "loss of money or property" and that "the injury suffered must be substantial." *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151, 160 (1st Cir. 2011). Under Idaho Code §§ 48-603 and § 48-608(1) an individual must suffer a loss of money or property, but when a consumer merely pays an existing legal obligation, he does not suffer

damages although there may be involved deceptive acts or practices. *Yellowpine Water User's Assn. v. Imel*, 105 Idaho 349, 352 (1983).

To the extent that the Appellants seek to have this Court agree that there are lucrative state law causes of action, even after the settling parties and the District Court have concluded otherwise, they must show this Court that they have some basis for their contention. The burden is on Appellants to show that there are state-law claims that are not only valuable, but that are also available to more than a handful of Michigan class members. See *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Instead of requiring the plaintiffs to conduct what may be a snipe hunt, district judges should do what the court did here: Invite objectors to identify an available state-law theory that the representatives should have raised, and that if presented would have either increased the recovery or demonstrated the inappropriateness of class treatment.")

Adding a state law cause of action for a violation of a debt collection statute or a state UDAP statute, does not significantly increase the potential for a monetary recovery for each individual, such that it would be a superior alternative for each class member to bring their own case. For all of the reasons that class actions are superior, this case should proceed as one. Few of the class members would file their own action. By now they are all aware of the fact that Midland has violated the FDCPA by the use of these affidavits, yet to the best of our

knowledge, none has filed.  The only way for any recovery for virtually all of the class members is in the context of this class action.

In the final analysis, when looking at all of the potential claims that could be asserted under the state consumer protection statutes of all the states, the relief available is, unsurprisingly, similar or identical to the FDCPA.  Consumers in many states have no private cause of action. In those states that allow a private cause of action, the injured individual is entitled to actual damages[2] and few states allow a possible award of statutory damages in the absence of actual damages.

This is the same relief available under the FDCPA.  State statutes, as a matter of course, do not entitle an individual to greater statutory damages, than under the FDCPA.  Appellants point out that some of these remedies are cumulative, and a person could be awarded statutory damages under both federal and state laws.  There is a *potential* for a larger award, but there is also the greater potential that class members will not be entitled to actual damages nor any award. It is important to note that the amount Midland agreed to pay under the terms of the revised settlement, is much more than the liability it would have if the maximum amount of $500,000 were to be awarded under the FDCPA.

---

[2] The District Court had already finally determined that there were no actual damages in *this* matter.

### 3. The Questionable Viability of Class Members' Pursuing a State Law UDAP Claim

A great number of states do not even allow for a private cause of action. Many other states require actual damages to pursue an action. Many of the damages theories advanced by objectors are novel and speculative. The limitations periods for these state statutes are also problematic, because the affidavits used in the class members' collection actions are, at a minimum, four years old and could be more than 10 years old, based on the class definition.

A survey of the statutes of all states reveals that only two states have statutory limitations periods that would allow any of these state law claims to be litigated. In Michigan a private action must be filed within six years of the act and in Arkansas the limitations period is five years.  It  should further be noted that a private remedy is available in Arkansas only to a person who suffered actual damages as a result of the violation. Ark. Code Ann. § 4-88-101, *et seq.* If the Revised Settlement were to be rejected, there would be no relief available to any class members who reside outside of Michigan or Ohio under the FDCPA or the state statutes.  This fact supports the superiority of settling this cause as a class action.  This is no small point to more than 130,000 Class Members who have twice gone though the process of filing their claim in order to recover from Midland.  The net amount of $2,443,200.00 available to the Class Members would

be completely lost to the Class if the Revised Settlement Agreement were not to be upheld.

### 4. State Law UDAP Claims Cannot Produce the Results Asserted by Appellants

Appellants' mantra throughout their brief is that the settlement prohibits class members from seeking attorneys' fees in any action to vacate a judgment. Yet, the Revised Settlement Agreement contains no such prohibition.  It appears, from the arguments made, that Appellants believe that they may file a state law claim under a statute which might contain a fee shifting provision, making the identical allegation that the affidavit used by Midland to procure a judgment contained deceptive and misleading language, by attesting to the nonexistent personal knowledge of the Midland employee.  But, even if such claims *could* be filed, the results described by Appellants do not exist.

Consumer protection statutes are found in most states.  As noted above, some states require that the consumer suffer an ascertainable and actual loss in order to prevail and recover the actual damages. Other states provide statutory damages for the commission of an unfair or deceptive act. The vast majority of statutes do have a fee shifting provision, allowing a court to award attorneys' fees to the prevailing party.

However, what Appellants do not explain is how these claims can be utilized to vacate a judgment. Procedurally, this is a very difficult task.  Asking one court

to determine, that a debt collector's document used in a collection lawsuit in another court, is misleading and deceptive and in violation of a prohibition in a consumer protection statute - - - does not invalidate a judgment issued by that other court. Furthermore, only the court that issued the judgment has the ability to vacate its order. The inadequacy of their argument is best illustrated by the fact that Counsel for Appellants already has a case pending in Michigan alleging statutory violations, seeking payment of damages and attorneys fees but not seeking the vacatur of judgments as a remedy.   More importantly, the availability of such relief, in the context of the FDCPA cause, previously has been briefed in response to Objectors filings in the Court below, and it has been concluded that the Rooker-Feldman doctrine precludes such a remedy.   As stated in Vassalle record #127 Named Plaintiff's Response to Objections, ID # 1197:

"It has been suggested by some Objectors that the Settlement is defective on the basis that it does not include a provision vacating all state court judgments obtained by Midland in which an affidavit was used. (See Objection of Witt #81). Although this would be highly desirable, such relief is beyond the scope of this litigation and is relief that is simply not available from this Court.   Under the *Rooker-Feldman* doctrine, the Federal Court cannot challenge a valid state court judgment and actual damages could not be derived from that final judgment of the state court.   The origin of the *Rooker-Feldman* doctrine is 28 U.S.C. § 1257(a),

which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1922), the Supreme Court interpreted this statute to mean that only it can hear appeals from final judgments of state courts, and, therefore, by negative inference a federal district court does not have subject matter jurisdiction to review a case that was resolved by state courts. *Id*. at 415-16. The Supreme Court elaborated on this principle in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), when it held that challenges to a state court judgment are barred not only if the claims forming the basis of the challenge were raised in the state court proceedings, but also if the claims presented to the district court are "inextricably intertwined" with the state court's decision of the plaintiff's claims. *Id.* at 483 n. 16."

If a class member were to be presently attempting to vacate a judgment, the debt collection case has obviously already been decided and a final judgment has issued. There is no possibility to assert an affirmative defense or bring a counterclaim in a case that has been closed, in most instances for at least a period of three to ten years. For these situations, attorneys' fees awardable under state consumer protection statutes have never been available.

The reality is that attorneys' fees are not available in an action commenced solely to vacate a default judgment, with or without this settlement. The District Court did not discuss any "new limitations" on the rights of class members to challenge Midland's judgments, because there were no new limitations in the Revised Settlement. In fact, the Revised Settlement gave the class members new rights to challenge Midland's judgments, allowing them to use the fact that Midland used an affidavit that was not made on personal knowledge as a reason to ask a court to vacate or to defend a collection case that was still pending.

It is significant to note that vacation of state court judgments, even if available, is only available through the process that begins with each individual petitioning the local court that issued the judgment. The class members would be obligated to meet the necessary criteria under each state's law for that remedy. For the vast majority of class members, any action to vacate a state court judgment, especially one based only upon the narrow reason of the lack of personal knowledge in an affidavit, is procedurally unavailable because the limitations for such actions have expired. The procedure used to vacate a judgment in Ohio, for example, is to file a motion to vacate in the court that issued the judgment. Under the Ohio Rules of Civil Procedure, as in the Federal Rules, a motion to vacate a judgment based upon newly discovered evidence or fraud, misrepresentation or misconduct must be made not more than one year after the judgment was entered.

Civ.R. 60(B).  For members of this settlement class defined as those who were sued by Midland with affidavits filed between January 1, 2005 and March 11, 2011, it is highly unlikely that a motion to vacate a judgment not yet filed will be timely.

Although not addressed in Appellants' brief, the only possible explanation that Appellees can discern from the arguments Appellants have previously presented to the District Court that would describe a theoretical remedy deals not with the vacatur of judgments, but a novel and speculative theory of damages they claim may be available under consumer protection statues.  In their brief in the District Court, Appellants noted three recent district court decisions, *Hamid v. Stock & Grimes, LLP*, 876 F.Supp. 2d 500 (E.D.Pa. 2012); *Abby v. Paige*, 2013 WL 141145 (S.D. Fla. 2013) and *Alonso v. Blackstone Financial Group LLC*, 2013 WL 3992122 (E.D.Cal. 2013), which they claim would classify all payments paid as a result of illegal debt collection practices as damages under the FDCPA.  Those three decisions either ignore, or attempt to distinguish, all of the multitudinous of other cases that hold that payment of an amount that was *actually owed* cannot constitute damages.  Class Counsel is unable to locate a single state court case wherein the payment of a valid debt considered actual damages under either the FDCPA or a state statute.

To the contrary, many cases hold the opposite. See *Brown v. Enter. Recovery Sys.*, 2013 Tex. App. LEXIS 10658 at *51-52 (Tex. App., Aug. 22, 2013) (despite a finding of other violations of consumer laws, threatening to and eventually taking a garnishment of a tax refund to repay valid federal student loan debt is not a violation of the Texas Fair Debt Collection Practices Act because that Act requires proof of actual damages); *Moritz v. Daniel N. Gordon, P.C.*, 895 F.Supp. 2d 1097, 1116 (W.D.Wash. 2012) (plaintiff not entitled to a return of the amounts paid to settle a valid debt under the Washington Consumer Protection Act); *Gray v. Suttell & Assocs.*, 2012 U.S. Dist. LEXIS 6\43885 at *18-19 (E.D.Wash., March 28, 2012) (although the activities may be in violation of the Washington Consumer Protection Act, there is no injury to business or property by paying a valid debt); *Deutsche Bank Nat'l Trust Co. v. Belizaire*, 2011 Conn. Super. LEXIS 1842 at *133-134 (Conn., July 13, 2011) (finding no violation of the Connecticut Unfair Trade Practices Act's requirement that consumer prove "any ascertainable loss of money or property" when loan forgiveness on a second mortgage was awarded in an amount in excess of the amount of payments made); *People v. Nationwide Asset Servs., Inc.*, 888 N.Y.S.2d 850, 870-871 (N.Y. 2009) (for violations of New York's General Business Laws and Business Corporation Law for deceptive business practices and false advertising by a debt relief company, granting as restitution only those amounts paid by consumers in

aggregate fees and settlements of accounts in excess of the amounts originally due to creditors at the time they enrolled in the program); *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 902 (Wash. 2009) (Although not the only way to prove injury under the Washington Consumer Protection Act, "[i]f the deceptive act actually induces a person to remand payment that is not owed, that will, of course constitute injury."); *Flores v. Rawlings Co., LLC*,  177 P.3d 341, 357 (Haw. 2008) (in determining whether plaintiffs have established injury within the meaning of Haw. Rev. Stat. § 480-13 actual collection of amounts owed did not cause any damage); *Camacho v. Automobile Club of Southern California*, 48 Cal. Rptr.3d 770, 779 (Cal. 2006) (there is no injury under the California Business and Professions Code in paying a sum that is actually owed); *Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998) (holding that Plaintiff had no actual damages when certifying a class under the FDCPA and the Colorado Fair Debt Collection Practices Act, when Plaintiff responded to harassing debt collection letters by paying the amount of a dishonored check and service charge of the merchant).

Even if there was a remote possibility that some class member who may have paid on a judgment could obtain a refund under this novel and speculative theory of damages under a consumer protection statute, Appellants have still never advanced any explanation as to how these statutes could be used to vacate a

judgment.  The individual inquiry necessary to ascertain whether or not each class member's debt was valid would further preclude class consideration.

### B. The Appellants' Focus on the Vacation of Judgments as a Significant Factor in the Settlement of this Case.

#### 1. Intervenor-Appellants Have Not Explained How the Class Mechanism Could Be Used for Mass Vacatur of Judgments.

Appellants start out their analysis by describing the 1.44 million class members as those against whom Defendants obtained judgments by use of a fraudulent affidavit.  This premise, however, is not true. Membership in the Class does *not* depend on whether or not Midland obtained a judgment.  As described below in Section D, based upon the status of the four Named Plaintiffs and the four objectors filing this appeal, by extrapolation, it is clear that all class members do not have judgments against them. It is nonetheless a misrepresentation to contend that the entire class has an interest in vacating judgments.

The factual disparity among class members who have judgments and might seek to vacate them, makes class action maintainability impossible.  Unlike the claims that are being settled here under the FDCPA, by asserting that certain common language used in affidavits was false and misleading, any case seeking a mass vacatur of judgments would have numerous and necessary individualized inquiries. Any court looking into certification of such a class would be faced with conducting an in-depth analysis of the facts surrounding each judgment issued.

Questions, such as: "Did the class member answer the complaint?"; "Did the class member assert any defenses?"; "Did the class member appear at a trial or hearing?"; "Did the class member provide any evidence or testimony?"; or "Did the class member admit to the debt?" must be asked and answered. The individualized analysis involved in exploring the answers to these questions would render class adjudication impossible.

Simply because Appellants state that their inability to pursue a collective action "effectively eliminates the ability of most class members to actually challenge the false affidavits", does not make that statement true. It does not mean that a class action would be available, in the absence of the Revised Settlement.

The prohibition in the Revised Settlement against commencing a class action to seek to vacate judgments is reasonable. It does not prevent any individual Class Member from seeking to vacate their own judgment, which is the right that the Objectors sought to preserve in the first appeal to this Court. A class action seeking to vacate judgments would not be a superior method to resolve any dispute pertaining to the validity of a large number of unique judgments.

### 2. State Law Procedural Concerns Affecting Actions to Vacate Judgments

The errors in Appellants' assertion that state law causes of action with fee shifting provisions could be used to vacate judgments if the Revised Settlement is rejected, has been addressed above. The statutes may provide relief in the form of

payments of actual or statutory damages, but the remedy of vacating a judgment is not available. The most important consideration, however, is the fact that most Class Members are precluded from filing these actions by their state's statute of limitations. Appellants' recurring argument that the release of state law causes of action effectively eliminates the ability of most class members to actually challenge the false affidavits, is not factual.

The *Amicus* brief of the AARP adds additional confusion to the question as to the ability of litigation to be used to force Midland into vacating judgments, by presenting factually inconsistent cases as examples of what the Class Members might be giving up. AARP refers to a settlement obtained by the New York Attorney General with Encore (Midland's parent group) for filing thousands of time-barred debt collection actions, which resulted in the vacation of 4,500 judgments. However, that cause of action would not have been released in the Revised Settlement, because the alleged debt collection abuse was not the deceptive language used in an affidavit. This type of broad, over-inclusive exaggeration is nothing but fear-mongering. It should be clear from the context of the claims that the New York settlement has nothing to do with this case's Revised Settlement and that the New York case has no relevance to any state law claims that will be released by the Class.

Furthermore, the additional supposition of the AARP that the waiver by Class Members of the right to seek relief from Midland's judgment on behalf of two or more judgment debtors may affect the right of attorneys general to exercise their regulatory authority and seek vacatur of the fraudulently procured judgments is also invalid.  The Class Members release their claims, but the Attorneys General are not parties to this case and are not bound by the release in the Revised Settlement.  This distinction was addressed years ago by the District Court, on May 17, 2011, when the State of Minnesota sought a clarification of the Court's Orders. (*Brent* record #156 p. ID #2666).  ("This Court's orders refer only to 'Class Members' (defined in the preliminary approval order as 'natural persons') and 'persons with actual notice of this Order.'  The Supreme Court has stated that 'in common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it.' *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). Consistent with this reasoning, the preliminary injunction cannot be read to encompass the State of Minnesota. Moreover, Minnesota law provides authority for the attorney general to bring enforcement actions under its Collection Agencies Act for monetary and injunctive relief on behalf of the State. See Minn. Stat. §§ 8.31. 332.39.").  Any doubts as to whether the Class Member's release of state law claims will bind attorneys general have already been resolved.

### C. The Validity and Purpose of the Stipulated Injunction Accompanying the Settlement.

As part of the original Settlement Agreement, Midland agreed to alter its behavior and allow a Special Master, Hon. Richard McQuade, to review, not only the language used in its form debt collection affidavits, but also the policies and procedures Midland would use in producing and executing these affidavits. The Revised Settlement addressed this initial agreement and recognized that, in compliance with the original Settlement, the Special Master had held two hearings, the parties briefed many issues touching on various aspects of the affidavit language and procedures used by Midland, and all of Midland's form affidavits were reviewed, revised and reconsidered. The Special Master then issued detailed findings of fact and conclusions of law approving Midland's affidavit processes and forms on November 16, 2012. (Vassalle record # 227-1 pp. 5, 10-11).

The parties stipulated to an injunction requiring Midland to comply with Judge McQuade's orders for a period of five years, during which both parties would have the right to seek modification of the Stipulated Injunction based upon "an unfair burden on the business, or a change in the law" (Vassalle record #227-1 p. 11).

On October 14, 2014, the District Court entered an order, based on the stipulation between the parties, enjoining Midland to continue to use the affidavit procedures and language consistent with Special Master McQuade's orders for a

period of five years, and reciting all of the accompanying stipulations as they appear in the Revised Settlement Agreement. (Vassalle record # 282 p. 4).

At no time did the District Court ever infer that it was issuing the injunction under any authority derived from the FDCPA or the OCSPA. The countless pages of argument advanced by the Appellants, stating that neither statute creates a jurisdictional basis for the injunction are thus, irrelevant and superfluous.

Appellants apparently fail to recognize the difference between an injunction ordered by a court as a result of a contested litigation proceeding, where it would be necessary for a plaintiff to prevail on the merits of the claim, show irreparable injury, and show that he has no adequate remedy at law, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), and an injunction issued as part of an agreed Settlement. It is well established that "parties to a suit have the right to agree to anything they please in reference to the subject matter of their litigation, and the court, when applied to, will ordinarily give effect to their agreement, if it comes within the general scope of the case made by the pleadings." *Sansom Comm. By Cook v. Lynn*, 735 F.2d 1535, 1548 (3d Cir. 1984) quoting *Pac. R.R. v. Ketchum*, 101 U.S. 289, 297 (1979) (quotations & alterations omitted). District Courts are afforded wide discretion to give effect to joint compromises that timely advance the interests of the parties without wasteful litigation. See *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 317 (3d Cir. 2011) ("In exercising this discretion, the District

Court here could reasonably approve a mutually agreed-upon stipulation enjoining conduct with the Court's jurisdiction regardless of whether the plaintiffs could have received identical relief in a contested suit by satisfying each of the aforementioned requirements at trial.")

Appellants' citation to Fed.R.Civ. P. 65(d)(1)(A) is also misplaced. That Rule states that "[e]very order granting an injunction and every restraining order must state the reasons why it is issued." It goes on to further require that the order must "state its terms specifically; and describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed.R. Civ.P. 65(d)(1)(B), (C). There is no uncertainty or confusion in the Stipulated Injunction regarding what is required of Midland that would run afoul of Rule 65. See *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Appellants state that the Stipulated Injunction is misnamed as it is in fact a "consent decree". This argument lacks merit as a reason to invalidate the Revised Settlement. A consent decree is essentially a settlement agreement subject to continued judicial policing. *Stotts v. Memphis Fire Department*, 679 F.2d 541, 556 (6th Cir. 1982). A consent decree has attributes of both a contract and of a judicial act. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236 (1975). On the one hand, a consent decree is a voluntary settlement agreement which could be fully effective without judicial intervention. *United States v. City of Miami*, 664

F.2d 435, 439-40 (5th Cir. 1981). In this sense the decree merely memorializes the bargained for position of the parties. *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). A consent decree, however, is also a final judicial order. *Carson v. American Brands*, 450 U.S. 79, 84 (1981). Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties. *Stotts,* 679 F.2d at 557. Once approved, the prospective provisions of the consent decree operate as an injunction. *Plummer v. Chemical Bank*, 668 F.2d 654, 659 (2nd Cir. 1982).

Regardless of whether this specific provision in the Revised Settlement is labeled a "stipulated injunction" or a "consent decree", the District Court retains the authority to enforce all of the terms of the settlement. *Vassalle* record #282 ¶15. Retained jurisdiction vests the court with inherent authority to enforce its orders by granting injunctive relief. *SEC v. Dollar General Corp.*, 378 F. Appx. 511, 516 (6th Cir. 2010). The District Court may also force Midland's compliance with a finding of contempt. *Shy v. Navistar Intern. Corp.*, 701 F.3d 523, 532 (6th Cir. 2012); *Waste Mgmt. of Ohio v. City of Dayton*, 132 F.3d 1142, 1145 (6th Cir. 1997). This fact negates Appellants' assertion that any benefit there might arise from the injunction is purely illusory.

In the Sixth Circuit, only parties to a consent decree have standing to seek enforcement. *Aiken v. City of Memphis*, 37 F.3d 1155, 1168 (6th Cir. 1994). This

fact does not affect the enforceability of the stipulated injunction. Appellants state a concern that they are unable to monitor Midland's compliance with the injunction because they were not provided with actual copies of the final versions of the affidavits that were approved by the Special Master, and thus, there is no publicly available information to determine if Midland is in compliance. This argument lacks merit once the *Vassalle* record is reviewed.

As soon as the Special Master was appointed the process of reviewing and revising the affidavits began. All of the analysis of the language contained in the affidavits, along with the commentary of the Special Master was published in the written record of the *Vassalle* case and is accessible. These court filings are much more valuable than access to hundreds of pages of blank form affidavits, as they describe what language is permissible and the reasoning behind the Special Master's decisions. (See *Vassalle* record # 186 – Special Master Findings; #190 – Special Master Order; #193 – Decision and Order of Special Master; #198 – Defendants' Motion for Approval of Proposed Modification to Affidavit Language; #199 – Class Counsel's Response to Defendants' Motion for Approval of Proposed Modification to Affidavit Language;  #203 – Special Master Order granting Defendants' Motion for Approval of Proposed Modifications to Affidavit Language; and #204 – Special Master Findings of Fact and Conclusions of Law). Furthermore, even though these Appellants, as Objectors, did not participate in the

process, other Class Member-Objectors did. (See *Vassalle* record # 200 – Class Members-Objectors' Response to Defendants' Motion for Approval of Proposed Modification to Affidavit Language; #201 – Class Counsels' Reply to Class Members-Objectors' Motion for Approval of Revised Language; and #202 – Defendants' Joint Reply to Class Counsel and Objectors Responses to Motion for Approval). The process by which the affidavits were revised was conducted in the open, with the opportunity for all to participate.

While the Stipulated Injunction may not *specifically* prohibit Midland from somehow creating new  false affidavits, as Appellants contend, it grants the District Court the right to enforce the Special Master's orders for the period of a full five years. This Court previously stated that the injunction, as prospective relief, was of little value to the class.  How much value this relief may independently have was not the ultimate question for the District Court in reviewing the settlement as a whole. The injunctive relief was only one portion under consideration. This injunction does have some value for the class and the public.

By mandating that Midland use only language in all collection affidavits that had been approved by the Special Master as compliant with the injunction, Midland is prohibited from using affidavits that falsely claim to be based on personal knowledge. Extending the duration of the injunction to five years added

36

additional protection to the Class and the public. As for Midland's ability to resume its previous practices after that time period, the additional requirement that Midland appoint a person responsible for ensuring compliance with the affidavit procedures provides added ongoing protection. After the District Court clearly established that the former affidavits are violations of the FDCPA, it would be foolhardy for Midland to revert to using them again after the expiration of the injunction.

### D. The Adequacy of the Class Representatives

Appellants' contention that the changes in the Revised Settlement are inadequate to cure the prior inadequacy of the named Plaintiffs is off base and the reasons stated are factually inaccurate. In this argument Appellants no longer state that the Class Members' "most important" interest is "the ability to use the false affidavits against Midland to contest their debts in court", (because the Revised Settlement has preserved that right for them), and now claim that it is the need "to find a lawyer and pay that lawyer to use the falsity of the affidavits in defense of their cases." The argument being, that the Named Plaintiffs already have a lawyer, they are in a different position than the unrepresented Class Members. This is a bogus argument.

Appellants refuse to accept that this case is not about judgments, but a statutory violation of the FDCPA. It is not known how many Class Members

actually have judgments against them. Two of the Named Plaintiffs, Ms. Brent and Ms. Franklin, challenged the validity of their debts in the context of Midland's debt collection lawsuits and won dismissal of their cases. Ms. Franklin did this without an attorney, prior to the time she became a Named Plaintiff. It is certainly likely that many of the Class Members were able to get their debt collection cases dismissed, if they contested the debt. In this respect Ms. Franklin and Ms. Brent are similarly situated to these Class Members who have no reason to seek to vacate any judgment.

Midland obtained judgments against the other two Named Plaintiffs, Ms. Vassalle and Mr. Johnson. They have paid these judgments in full. Ms. Vassalle and Mr. Johnson certainly would have an interest in seeking to vacate their judgments and to be reimbursed for the funds they have paid to Midland, if this result were possible. They have an identical interest in finding an attorney who would agree that it is feasible to file an action to vacate their judgments and to pay that attorney. If Class Counsel would undertake that task, it could not be in the context of this action. A separate action would need to be filed, just as it would with any Class Member seeking the same relief.

This Court held that the monetary relief provided to class members in the initial settlement was perfunctory and *di minimus* in relation to the debt forgiven to Ms. Brent. Now, however, debt forgiveness is not a part of the Revised Settlement

Agreement for *any* class representative. However, Appellants assert that Class Counsel is now antagonistic to the class members because they were successful in settling Ms. Brent's debt collection case and stipulating to a dismissal of those claims. Yet, Appellants' counsel Ian Lyngklip, while representing Appellant Probst did exactly the same thing.  Mr. Lyngklip stipulated to the dismissal of Midland's collection action against Ms. Probst, dismissing her case with prejudice. (See *Vassalle* record #254-1). Surely Mr. Lyngklip is not suggesting that his representation of his client rendered Ms. Probst an inadequate class representative in the pending Michigan action, as well as placing himself in a position antagonistic to the Michigan class he seeks to represent. This argument is a mere smokescreen.

The Named Plaintiffs are in the same position and share the same interests as the Class Members. They are vigorously representing the interests of the Class. Appellants' arguments, once and for all, are based upon the inaccurate premise that the Named Plaintiffs have bargained away some fundamental ability of class members to use fee shifting statutes to vacate their judgments, thus making the ability to use the fact of a deceptively worded affidavit as a reason to seek vacatur impossible. Appellants have not been able to produce one case where a state statute prohibiting deceptive acts has been used to vacate a judgment issued in another case. The tools that Appellants claim that the Named Plaintiffs have bargained

away are illusory and the harm that is placed upon the Class Members are purely imaginary.

### E. The Reasons the State Attorneys General Objected

Appellants conclude that the District Court abused its discretion because the Opinion approving the Revised Settlement did not mention the objection filed by the Attorneys General of thirty-three states. However, the Opinion does explicitly discuss the substance of the objections that were presented to the Court and were fully briefed by Appellees. The District Court made it extremely clear at the final fairness hearing that the Court had reviewed all objections and the materials provided. (*Vassalle* record #266 p. 4) ("There have been multiple objections filed by class members, intervenors, and by attorneys general as *amicus curare*. You may rest assured that this judge has read all of the memoranda filed in this case in advance of this hearing, many filed as late as yesterday.")

The Attorneys General opposed the Revised Settlement for many of the same misconceptions regarding the value of state law claims and the availability of statutory attorneys' fees that could somehow be used to vacate judgments that have been advanced by Appellants. The failures of such contentions has been demonstrated above.

In addition, the Attorneys General expressed concern about the injunctive relief, stating that the approval of the form affidavits by the Special Master could

harm non-class members. Although the effect the approval of the affidavit language and the use of these affidavits in future debt collection actions is a legitimate factor to consider, the concern expressed by the Attorneys General is exaggerated. The *Amicus Curiae* concluded their brief by stating that "[t]he States respectfully submit that the approved affidavits do not constitute a binding opinion as to the legal sufficiency of the affidavits to prove Defendants' case, do not override any more demanding state law standard, and that an approval of the settlement is not tantamount to a declaration that the affidavits trump state law." (*Vassalle* record # 249-1 at 31). Class Counsel wholeheartedly agreed with this statement and presented an in-depth analysis to the District Court in response.

The approved affidavit language no longer represents that the Midland employee has any personal knowledge about the actual accounts prior to their purchase by Midland. Although the language used in the form affidavits is now deemed to accurately describe the knowledge of the affiant, this is not and never has been meant to suggest that any court should or must accept the affidavit as proof sufficient to establish the debt nor to meet the admissibility requirements of any specific jurisdiction.

The Attorneys General pointed out that there are several judicial jurisdictions that have stringent requirements for affidavits that are to be used in debt collection actions. They emphasize that the affidavits that were developed by

Midland under the supervision of the Special Master do not meet the specific criteria of those courts. Also attached to their *amicus* brief was a letter from the Association of Credit and Collection Professionals discussing proposed amendments by the Maryland Office of Attorney General regarding debt litigation. (*Vassalle* record # 249-2). More stringent requirements for the use of affidavits in local courts are to be applauded, and Class Counsel appreciates the efforts that are being made to achieve this goal. This fact should not create any dissonance with the stipulated injunction in the Revised Settlement Agreement.

The Special Master did conclude that the affidavit language meets the requirements of Fed.R.Evid. 803(6). (*Vassalle* record # 204 p. 11). Although the Attorneys General disagreed with this conclusion, the Special Master noted that numerous state courts follow rules that are identical or substantially similar to the Federal Rule (*Id.* fn.1), indicating an understanding that others do not and that ultimately the admissibility of the affidavits must be governed by state or local rules.

The language of Midland's affidavits has been revised to address the specific FDCPA violation *at issue in this case*. There is nothing in the approval process that would indicate that any affidavits are specifically authorized to be used in any specific jurisdiction or that they must be admitted in any court if the affidavit does not meet the requirements of that judicial forum. The injunction addresses the

language used in the affidavits and the process utilized by Midland to generate these forms. It does not address, let alone guarantee, the affidavit's admissibility.

It is undisputed that there are different requirements for affidavits in many different states. There is also the distinct possibility that the requirements will change in the near future in some jurisdictions. The Revised Settlement Agreement addresses the possible need to make future adjustments to the affidavits, by providing that Midland or Class Counsel may go back to the Special Master and seek "alteration or modification" of the injunction.

Courts can now more easily sort through admissibility questions because the affidavit language accurately states the basis for the knowledge of the affiant – the data in the possession of Midland. Midland's affidavits state that it purchased the account and what information it has about the debt, rather than asserting, as before, that the affiant has personal knowledge of information pertaining to the original account records. The questions of hearsay and admissibility can be determined by local courts. Courts are not required to accept the affidavits as admissible simply because the Special Master approved the language used.

The District Court's Opinion approving the Revised Settlement may not have addressed every single argument made by every objector and the Attorneys General, although it did address the state law arguments and their potential recoveries. (*Vassalle* record #281 p. 18). However, the District Court represented

that it had read and reviewed each document filed. *Id*. at 2. If we take the District Court at its word, the arguments made by the Attorneys General and the responsive arguments presented by Appellees were taken into consideration when the Court arrived at the conclusion that the Revised Settlement should be approved as fair and adequate.

### F.  The Perceived Flaws in the Class Notice

Appellants allege that the Class Notice is flawed because they believe it does not inform the class members how the Revised Settlement impairs their ability to pursue state court remedies. Specifically, Appellants take issue with the answer to question number 12 in the Class Notice, "*If Midland is currently suing me to collect a debt, does this settlement affect what I can do to defend myself?"* The correct answer, as stated on the Class Notice is *"No".* It is difficult to comprehend the thought process behind Appellants' determination that this answer is incorrect.

If there is a pending collection action against any Class Member, that Class Member is free to raise any defense that is available, including introducing the fact that an affidavit that may have been submitted to the Court prior to March 11, 2011 may have falsely declared that it was based upon personal knowledge, when it was not.

Only one of the three reasons listed by Appellants as alleged reasons the above answer is incorrect actually concerns the defense of a pending collection

action. That alleged reason inaccurately asserts that the Class Member would be deprived of using evidence gathered by Class Counsel to support the falsity of the affidavits. It is not clear exactly what evidence Appellants believe would suddenly become available, in the absence of the Revised Settlement, but the reasons that the District Court found the affidavit language was deceptive were described in detail in that Court's summary judgement decision. (*Brent* record #50). The evidence used by the District Court to arrive at its decision was derived solely from the deposition testimony of Midland's employee Ivan Jimenez. The pertinent testimony of Mr. Jimenez that was used to support the District Court's judgment is quoted in detail in that decision. There is no other evidence necessary and Class Counsel is not in the possession of any other evidence that would have the potential to affect the decision of any other court, should that court determine that the testimony of Mr. Jimenez is not sufficient.  The evidence gathered by Class Counsel is clearly set forth in the *Brent* summary judgment decision and is available for Class Members to use if they are defending a collection action.

Appellants erroneously conclude that the summary judgment decision in *Brent* is void, thus preventing class members from using that decision in state court matters to prove that Midland's standard practice was to produce affidavits that falsely assert personal knowledge. Appellants neglect to recognize that there are distinctions between situations where there is "a clear usurpation of power by a

district court, and not an error of law in determining whether it has jurisdiction." *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir 2000), citing *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986). "Since federal courts have 'jurisdiction to determine jurisdiction,' that is, 'power to interpret the language of the jurisdictional instrument and its application to an issue by the court,' error in interpreting a statutory grant of jurisdiction is not equivalent to acting with total want of jurisdiction." *Id.* citing *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980), quoting *Stoll v. Gottlieb*, 305 U.S. 165, 171 (1938). "[A]n erroneous interpretation of a jurisdictional statute does not render the underlying judgment void." *Id.*

"An error in interpreting a statutory grant of jurisdiction is not . . . equivalent to acting with total want of jurisdiction and does not render the judgment a complete nullity." *Hooks v. Hooks*, 771 F.2d 935, 950 (6th Cir. 1985). The District Court held, in reciting the procedural history of the *Brent* case, that "[o]n receipt of the counter-claim, Counterclaim Defendant Midland removed to the Northern District of Ohio, citing jurisdiction due to the counter-claim falling under a federal statute (namely, the FDCPA). MCM consented to the removal, and Brent did not object, *making the removal proper.*"(emphasis added) (*Brent* record #50, p. 3). Thus, this Court's technical error in determining jurisdiction, does *not* make the *Brent* decision a complete nullity, as is claimed by Appellants.

"A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void." *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 353-54 (1920).

As the U.S. Supreme Court stated, when reviewing a question of *res judicata* of an order with questionable jurisdiction:

"Even if that court erred in entertaining jurisdiction, its determination of that matter was conclusive upon the parties before it, and could not be questioned by them or either of them collaterally, or otherwise than on writ of error or appeal to this court." *Stoll v. Gottlieb*, 305 U.S. at 175, citing *Dowell v. Applegate*, 152 U.S. 327, 340 (1894).

Furthermore, Objectors have no absolute right to discovery. Though discovery may be appropriate if the record is inadequate to support approval of a settlement or if objectors are denied meaningful participation in a fairness hearing, neither circumstance exists here. *Id. Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 2015 U.S. Dist. LEXIS 52565, 214 (E.D. Pa. Apr. 22,

2015) citing *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 316 (3d Cir. 2005)

The other two reasons stated by Appellants have nothing to do with defending a collection action and are thus, not only inaccurate and misleading, but have no relevance to their contention of error. Appellants state that Class Members cannot pursue a collective action to set aside judgments, which is true. They also assert that Class Members cannot obtain attorney's fees available under state law in proceedings to set aside judgments. If this is an inference by Appellants that attorney's fees would otherwise be available under state law in proceedings to set aside judgments, that statement is incorrect, as previously shown by Appellees above. The Class Notice does not advise the class members that they are waiving their right to seek attorney's fees because there is no right to seek attorney's fees for the class to waive.

Lastly, Appellants disagree with Class Counsels' opinion that most potential plaintiffs would not be able to recover substantial additional amounts under state laws, even after this opinion was formed by a careful analysis of what relief is actually available. Class Counsel recognized that Appellants had a different viewpoint, and therefore advised Class Members to seek a second opinion from an attorney in their state should they wish to pursue the question further.

There is also nothing wrong with informing Class Members that the Defendants have changed their procedures and are no longer using affidavits that contain false information as to the personal knowledge of the affiant, and that this factor contributes to Class Counsels' opinion that the settlement is fair. Class members, who have already been sued by Midland once, will have the added protection that, should another collection lawsuit be filed against them, Midland will not be using a deceptively worded affidavit that is claimed to be made on personal knowledge. It is probable that other debt collectors, who will be aware of the process used to evolve the acceptable affidavit wording, will also alter their practices as a result of this stipulated injunction and the previous decision of the District Court. The public will be benefitted from this change in perspective.

Class Counsel did not abdicate their duty to properly advise the class members of their rights. The opinion stated was carefully and fully developed, despite the fact that a handful of objectors and their counsel have devised some rogue ideas and fabricated reasons to disagree.

### G. The Use of a Quick Pay Fee Provision in the Settlement Agreement.

The Revised Settlement Agreement includes a "quick pay" fee provision for the payment of attorneys' fees to Class Counsel. The new provision does not affect the amount of attorney's fees that are to be paid to Class Counsel, as these fees are always determined by the discretion of the District Court. In fact, there was no

increase in the amount of fees awarded from those awarded in the original settlement, despite the fact that the Revised Settlement Agreement was approved after an additional three years had passed and a great deal of additional work had been completed by Class Counsel.

The revision only dictates *when* the payment would be made. Appellants state that this revision "provided no benefit to the class".  However, they do not say that this revision was detrimental to the class, nor could they. Nothing in the fee payment provisions for Class Counsel will have any impact on the timing or amount of the payment to the class members.  This change affected only the timing of the payment of the fees to Class Counsel.[3]  The timing of the payment of fees to Class Counsel has no impact on the class members and should not be a consideration in assessing whether the settlement itself is fair or adequate to the Class.

In the Revised Settlement Agreement, Class Counsel negotiated payment of fees under terms that have been labeled "quick-pay" provisions. These provisions stipulate that class counsel will receive attorneys' fees when the settlement is approved by the district court, subject to refund if the settlement is later set aside. Federal Courts "routinely approve settlements that provide for payment of

---

[3] Even though the payment of the amount of fees in the agreement has been advanced to Class Counsel, should an award of lesser amount be finally approved, the difference would be reimbursed to the Settlement Fund by Class Counsel, according to the terms of the Revised Settlement Agreement.

attorneys' fees prior to final disposition in complex class actions.  See *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 283-85 (3d Cir. 2009); *In re MASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827 at *1-2 (N.D.Cal. Dec. 27, 2011); *The PMI Group, Inc. Sec. Litig.*, 3:08-cv-01405 (N.D. Cal. Dec. 20, 2010); *In re Gilead Sciences Sec. Litig.*, No. C-0304999 (N.D.Cal. Nov. 5, 2010). In fact, in a survey conducted of all class action cases settled in federal district courts during 2006, the quick-pay provision appeared in over one-third of the settlement agreements. Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1643 (2009).

The timing of the payment of attorneys' fees to class counsel, negotiated after the terms of the settlement had been firmly established, has no detrimental effect on the class members. Furthermore, "[t]he repayment requirements in the proposed settlement[] – which make all plaintiff's counsel firms and their equity owners jointly and severally liable for any repayment, and answerable to this Court - are more than adequate to protect the Class and Defendants." *In re TFT-LCD Litig.*, at *3.

## VII.  CONCLUSION

Class Counsel has worked painstakingly to ensure that the Revised Settlement Agreement adheres to the mandate of this Sixth Circuit. Appellants

bemoan the fact that they believe there were too few changes made in the Revised Settlement and that they did not benefit the class members' interests. Appellants never mention the fact that the Revised Settlement mandated that Midland pay all additional expenses of Notice and Administration that resulted from the renegotiation of the original agreement.  Every single deficiency noted by this Court in that first appellate decision have been addressed and resolved. Additional research and evaluation has been undertaken to ensure that there is a clear understanding of the potential relief available to all class members.

The settlement now allows class members to use the falsity of the affidavits in attempts to vacate judgments. The impediments that the Revised Settlement Agreement allegedly places in the path of class members seeking to vacate the judgments, are not procedurally viable and are not inconsistent with the mandate. Class Counsel has continued to act in the best interests of the Class and will continue to do so.  The change in the timing of the payment to Class Counsel had no detrimental effect on the Class.

There are 130,304 individuals who are Class Members and who have twice filed claims while waiting their distribution of a recovery from the settlement fund.

Appellants' objections to the Revised Settlement have no merit. The District Court's approval of the Revised Settlement Agreement should be affirmed.

Respectfully submitted,

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
dms@murrayandmurray.com
Donna J. Evans, Esq. (0072306)
dae@murrayandmurray.com
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky OH  44870
Telephone:   (419) 624-3000
Facsimile:    (419) 624-0707

Attorneys for Plaintiffs-Appellees

## CERTIFICATE OF COMPLIANCE

Pursuant to 6th Cir. R. 32(a), the undersigned counsel certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).  Exclusive of the exempted portions allowed in Fed. R. App. P. 32(a)(7)(B)(iii), the brief contains 12,596 words.  The brief was prepared in Microsoft Word 2010, using Times New Roman 14 pt. font.

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)
Attorneys for Plaintiffs-Appellees

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system on this 21st day of May, 2015.

*/s/Dennis E. Murray, Sr.*
Dennis E. Murray, Sr., Esq. (0008783)
Donna J. Evans, Esq. (0072306)
Attorneys for Plaintiffs-Appellees

## APPELLEES DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| Record Citations to *Vassalle, et al. v. Midland Funding, et al.* United States District Court, Northern District of Ohio Case No. 11-cv-00096 | | | |
| --- | --- | --- | --- |
| **Designation of Entry** | **Date Filed** | **Record Entry Number** | **Page ID Number** |
| Named Plaintiffs' Response to Objections to Settlement | 7/05/11 | 127 | 1197 |
| Special Master Findings | 4/25/12 | 186 | 3015-3021 |
| Special Master Order | 7/05/12 | 190 | 3142-3146 |
| Special Master Decision and Order | 8/03/12 | 193 | 3181-3183 |
| Defendant's Motion for Approval of Proposed Modifications to Affidavit Language | 8/28/12 | 198 | 3205-3210 |
| Class Counsel's Response to Defendants' Motion for Approval of Proposed Modification to Affidavit Language | 9/06/12 | 199 | 3211-3216 |
| Class Members - Objectors' Response to Defendants' Motion for Approval of Proposed Modification to Affidavit Language | 9/11/12 | 200 | 3217-3221 |
| Reply to Class Members/Objectors Re: Midland's Motion for Approval of Proposed Modification to Affidavit Language | 9/14/12 | 201 | 3222-3225 |
| Defendants' Joint Reply to Class Counsel and Objectors' Responses to Motion for Approval of Proposed Modifications to Affidavit Language | 9/14/12 | 202 | 3226-3234 |

| | | | |
|---|---|---|---|
| Special Master Order | 10/02/12 | 203 | 3235-3240 |
| Special Master Findings of Fact and Conclusions of Law | 11/16/12 | 204 | 3241-3251 |
| Defendant's Brief Pursuant to 8/30/13 Status Conference Order | 9/13/13 | 216 | 3306-3326 |
| Exhibit B - Probst, et al v. Encore Capital Group, Inc., et al | 9/13/13 | 216-2 | 3363 |
| Response of Certain Previous Objectors on State Law Claims | 10/13/13 | 220 | 3490-3507 |
| Defendants' Reply to Objectors' Brief | 10/18/13 | 224 | 3545-3564 |
| Class Counsel's Analysis of the State Law Causes of Action Post Remand | 11/07/13 | 225 | 3617-3634 |
| Exhibit 1 - Revised Class Action Settlement Agreement | 11/22/13 | 227-1 | 4048, 4053-4054 |
| Amended Amicus Brief of 32 Attorney Generals In Opposition to the Revised Proposed Settlement | 4/21/14 | 249-1 | 4429, 4444 |
| Exhibit 1 - Letter from the Association of Credit and Collection Professionals | 4/21/14 | 249-2 | 4448-4449 |
| Exhibit 1 - Stipulated Order of Dismissal | 5/07/14 | 254-1 | 4630 |
| Transcript of Fairness Hearing held on May 15, 2014 before Senior Judge David A. Katz | 5/21/14 | 266 | pp. 4, 20 & 23 |
| Memorandum Opinion | 10/14/14 | 281 | 5630 |
| Judgment Entry Approving Settlement and Attorney Fees | 10/14/14 | 282 | 5638 |

| Record Citations to *Midland Funding LLC v. Brent, et al.*<br>United States District Court, Northern District of Ohio<br>Case No. 08-cv-01434 | | | |
|---|---|---|---|
| **Designation of Entry** | **Date Filed** | **Record Entry Number** | **Page ID Number** |
| Memorandum Opinion | 8/11/09 | 50 | N/A |
| Memorandum Opinion & Order | 5/17/11 | 156 | 2666 |

| Record Citations to *Vassalle, et al. v. Midland Funding, LLC, et al.*<br>U.S. Court of Appeals Sixth Circuit<br>Case Nos. 11-3814/3961/4016/4109/4021 | | | |
|---|---|---|---|
| **Designation of Entry** | **Date Filed** | **Record Entry Number** | **Page ID Number** |
| Opinion | 2/26/13 | 006111602536 | N/A |