Case No. 14-4156

_____

In The
**United States Court of Appeals
For The Sixth Circuit**

_____

**ELAINE PELZER, DIANNE FREDERICK, GULAR
PROBST, and RAUL OSORIO,**

*Objectors – Appellants*,

**v.**

**MARTHA VASSALLE, JEROME JOHNSON, ANDREA BRENT, and
HOPE FRANKLIN,**

*Plaintiffs – Appellees*.

and

**MIDLAND FUNDING LLC, MIDLAND CREDIT MANAGEMENT,
INC., and ENCORE CAPITAL GROUP, INC.,**

*Defendants – Appellees*.

On Appeal From The United States District Court
for the Northern District Of Ohio
Case No. 3:11-cv-0096

_____

**BRIEF OF DEFENDANTS-APPELLEES**

_____

DYKEMA GOSSETT PLLC
Theodore W. Seitz (P60320)
201 Townsend St., Ste. 900
Lansing, MI 48933
(517) 374-9149

JENNER & BLOCK LLP
Richard L. Stone
Amy M. Gallegos
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
(213) 239-5100

2364607.4

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS</u>
## <u>AND FINANCIAL INTEREST</u>

Pursuant to Sixth Cir. R. 26.1, Defendants-Appellees Midland Funding

LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. make

the following disclosures:

1.    Are said parties a subsidiary or affiliate of a publicly owned corporation?

YES.

If Yes, list below the identity of the parent corporation or affiliate and the

relationship between it and the named party:

Midland Credit Management, Inc. and Midland Funding LLC are wholly owned

subsidiaries of Encore Capital Group, Inc., a publicly traded company.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a

financial interest in the outcome?

NO.


May 21, 2015_____                          /s/ Amy M. Gallegos_____
(Date)                                          (Signature of Counsel)

2364607.4

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ................................................. 1

JURISDICTIONAL STATEMENT ......................................................................... 2

STATEMENT OF ISSUES ................................................................................... 3

STATEMENT OF THE CASE............................................................................... 4

I.     Preliminary Statement. ................................................................................ 4

II.    Procedural History. ................................................................................... 11

     A.   The District Court Litigation. ................................................... 11

     B.   The Original Settlement And Settlement-Related Litigation. ................ 13

     C.   The Special Master Proceedings.................................................... 14

     D.   The *Vassalle I* Appeal............................................................ 17

     E.   The *Vassalle I* Opinion. ......................................................... 18

     F.   The Proceedings After Remand.................................................... 20

     G.   The Revised Settlement. ........................................................... 22

     H.   The Reaction to the Revised Settlement........................................ 24

     I.   Appellants' Counsel And His History With This Settlement................ 26

     J.   The Order On Appeal.............................................................. 28

SUMMARY OF ARGUMENT ........................................................................ 31

STANDARD OF REVIEW ............................................................................. 34

ARGUMENT ............................................................................................... 34

I.     The Revised Settlement Complies With *Vassalle I*........................................ 34

     A.   The Class Representatives Did Not Receive Preferential Treatment...... 34

B.    The Settlement Class Satisfies The Superiority Requirement Of Rule 23(b)(3). ................................................................................... 37

C.    The Class Notice Satisfies Due Process. .................................................. 41

II.    Appellants' Contention That The Revised Settlement Still Prevents Class Members From Challenging Judgments Is Meritless. .................................... 44

III.    The Parties Were Not Required To Reach A Settlement That Paid More Money Or Excluded State-Law Claims. ......................................................... 50

IV.    Appellants' Complaints About The Stipulated Injunction Are Meritless. ...... 57

V.    The District Court Was Not Required To Mention The State Attorneys General In The Order Approving The Settlement. ......................................... 61

CONCLUSION ....................................................................................... 63

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albritton v. Sessoms & Rogers, P.A.*,
  No. 09-321, 2010 WL 3063639 (E.D.N.C. Aug. 3, 2010) ..................................55

*Bailey v. Great Lakes Canning, Inc.*,
  908 F.2d 38 (6th Cir. 1990) ..................................................52

*Carroll v. United Compucred Collections, Inc.*,
  399 F.3d 620 (6th Cir. 2005) ..................................................8, 32, 41

*Clark v. Leasecomm Corp.*,
  2000 WL 1512373 (Mass. Super. Aug. 21, 2000)..............................................46

*Clark v. Main Street Acquisition Corp.*,
  553 F. App'x 510 (6th Cir. 2014) ..................................................55

*Contreras v. Citibank (S.D.)*,
  198 Ill. App. 3d 1059 (1990) ..................................................46

*Dog Pound, LLC v. City of Monroe*,
  558 F. App'x 589 (6th Cir. 2014) ..................................................62

*Domonoske v. Bank of Am., N.A.*,
  790 F. Supp. 2d 466 (W.D. Va. 2011)..............................................27

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ..................................................52

*Gargiulo v. Forster & Garbus Esqs.*,
  651 F. Supp. 2d 188 (S.D.N.Y. 2009) ..................................................56

*Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust*,
  491 F.3d 320 (6th Cir. 2007) ..................................................12

*Gooch v. Life Invs. Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ..................................................43

*Goray v. Unifund CCR Partners*,
  No. 06-00214, 2007 WL 4260017 (D. Haw. Dec. 4, 2007) ..................................................56

iv

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................61

*In re Commonwealth Institutional Sec., Inc.*,
  394 F.3d 401 (6th Cir. 2005) ................................................................48

*In re Consol. 'Non-Filing Ins.' Fee Litig.*,
  431 F. App'x 835 (11th Cir. 2011) ......................................................60

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) ...............................................................35

*In re Fireside Bank Cases*,
  187 Cal. App. 4th 1120 (2010) ............................................................47

*In re Se. Milk Antitrust Litig.*,
  No. 08-1000, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) ...........59

*In re Unumprovident Corp.*,
  No. 02-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) ................59

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ....................................................passim

*Int'l Dairy Foods Ass'n v. Boggs*,
  622 F.3d 628 (6th Cir. 2010) ...............................................................60

*International Union, United Automobile, Aerospace, & Agricultural
  Implement Workers of America v. General Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ...............................................................18

*Janson v. Katharyn B. Davis, LLC*,
  No. 14-709, 2014 WL 7027352 (E.D. Mo. Dec. 11, 2014)................55

*Lingo v. State*,
  138 Ohio St. 3d 427 (2014) ..................................................................46

*Local No. 9, Int'l Ass'n of Firefighters v. City of Cleveland*,
  478 U.S. 501 (1986).......................................................................10, 60

*Manlapaz v. Unifund CCR Partners*,
  No. 08-6524, 2009 WL 3015166 (N.D. Ill. Sept. 15, 2009)..............56

*Moore v. Midland Credit Mgmt., Inc.*,
2007 WL 4171562 (Conn. Super. Nov. 5, 2007) ...............................................47

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ..............................................................49, 51, 52

*O'Rourke v. Palisades Acquisition XVI, LLC*,
635 F.3d 938 (7th Cir. 2011) ............................................................................56

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ..........................................................................34

*Roddy v. Grand Trunk W. R.R. Inc.*,
395 F.3d 318 (6th Cir. 2005) ............................................................................12

*Shetiwy v. Midland Credit Mgmt., Inc.*,
15 F. Supp. 3d 437 (S.D.N.Y. 2014) .................................................................55

*Sullivan v. DBS Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) .......................................................................34, 49

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982) .............................................................................49

*Tennille v. W. Union Co.*,
— F.3d —, 2015 WL 1948493 (10th Cir. May 1, 2015) ............................10, 59

*Tuggle v. Seabold*,
806 F.2d 87 (6th Cir. 1986) .......................................................................61, 62

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) ....................................................................passim

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ..........................................................9, 33, 52, 60

**STATUTES**

15 U.S.C. § 1692...............................................................................................36, 40

28 U.S.C. § 1291 ....................................................................................................2

28 U.S.C. § 1331 ....................................................................................................2

2364607.4

28 U.S.C. § 1332 ................................................................................................2

28 U.S.C. § 1441 ................................................................................................2

28 U.S.C. § 1446 ................................................................................................2

Fed. R. App. P. 28 ............................................................................................62

Mich. Comp. Laws § 339.916 .........................................................................54

Mich. Comp. Laws § 445.251 .........................................................................54

Mich. Comp. Laws § 445.257 .........................................................................54

Mich. Comp. Laws § 445.257(2) .....................................................................54

Mich. Ct. R. 2.603 ...........................................................................................47

Va. Code § 59.1-197 ........................................................................................54

Va. Code § 59.1-198 ........................................................................................54

Va. Code § 59.1-200 ........................................................................................54

Va. Sup. Ct. R. 3:19 .........................................................................................47

2364607.4

## STATEMENT REGARDING ORAL ARGUMENT

Because Appellants have not presented any colorable grounds to overturn the district court's judgment, Defendants-Appellees do not believe oral argument is necessary. However, in the event the Court determines that argument would be of assistance, Defendants-Appellees request the opportunity to be heard.

1

# JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement incorrectly states the basis for the district court's jurisdiction over two of the three settled cases. *Franklin v. Midland Funding LLC*, Case No. 3:10-cv-0091 and *Vassalle v. Midland Funding LLC*, Case No. 3:11-cv-0096 did not assert claims under the Fair Debt Collection Practices Act ("FDCPA"), and the district court's jurisdiction over these cases did not arise under 28 U.S.C. § 1331. These cases asserted state-law claims and the district court's jurisdiction was pursuant to 28 U.S.C. § 1332(d) (CAFA jurisdiction). The district court had jurisdiction over *Brent v. Midland Funding LLC*, Case No. 3:11-cv-1332 pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF ISSUES</u>

When the parties originally settled these class actions, this Court vacated the final approval order because the settlement barred class members from using the defect in Midland's affidavits to challenge Midland's state-court judgments against them, thereby depriving them of the ability to individually control their defense of the judgments. However, this Court also held that the district court did not abuse its discretion in finding that all of the factors in this circuit's seven-factor fairness test were satisfied. The parties revised the settlement to allow class members to use the affidavits to challenge their judgments, without reducing the monetary relief that was already adjudicated to be fair. Was the district court correct to approve the revised settlement?

## STATEMENT OF THE CASE

### I.    Preliminary Statement.

The class settlement being challenged in this case resolves three overlapping class actions dating back to 2008, which allege that Midland violated federal and state laws by filing affidavits in debt-collection lawsuits that inaccurately stated that the affiant had personal knowledge about the debt, when in fact the information in the affidavit was from Midland's business records and data. The substantive information in the affidavits was not false, and there is a growing consensus among courts that a misstatement of personal knowledge in an otherwise accurate affidavit is not even actionable. The district court stated in 2009 that Midland could easily fix this issue by basing its affidavits on the accuracy of its records and data instead of personal knowledge.[1] Midland made this change years ago. Yet Midland is still paying $5.2 million to settle these claims.

When the parties first tried to settle this case in 2011, various consumer-advocacy and legal-aid groups objected because the settlement

---

[1] Summary Judgment Memorandum Opinion, Brent RE 50, Page ID # 949. Citations to "Brent RE" refer to the record in *Midland Funding LLC v. Brent*, Northern District of Ohio Case No. 3:08-cv-1434. Citations to "Vassalle RE" refer to the record in *Vassalle v. Midland Funding LLC*, Northern District of Ohio Case No. 3:11-cv-0096. Citations to "Franklin RE" refer to the record in *Franklin v. Midland Funding LLC*, Northern District of Ohio Case No. 3:10-cv-0091.

4

(the "Original Settlement") barred class members from using the defect in the affidavits to challenge Midland's judgments in their underlying state-court debt-collection cases. They contended that this provision deprived class members of the ability to individually control their defense of Midland's judgments, and ensured that Midland would be able to collect on judgments worth hundreds or thousands of dollars each. This Court agreed and vacated the order approving the settlement on that basis. *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ("*Vassalle I*"). However, the Court found no abuse of discretion in the district court's application of this circuit's seven-factor fairness test, or in the district court's conclusion that all seven factors favored approving the settlement. *Id*. at 754-55.

The parties revised the settlement to address this Court's ruling. The revised agreement (the "Revised Settlement") expressly permits class members to seek to vacate Midland's judgments in their individual cases, on the ground that the affidavit was made without personal knowledge. Midland is still paying the same $5.2 million it was required to pay in the Original Settlement, though it is no longer receiving the global peace that motivated it

to settle in the first place.[2] None of the consumer advocates or legal-aid groups who opposed the original settlement objected to the Revised Settlement. In fact, out of 1.4 million class members, *only 13 people* filed objections.

This appeal was filed by a lawyer who unsuccessfully challenged the Murray and Murray firm for the position of counsel for the nationwide class. Appellants' counsel joined the objections to the Original Settlement and, when the Revised Settlement was reached, he filed a motion seeking fees from the class fund for the benefit his work conferred on the class — yet he now claims that the very change for which he successfully advocated is actually *bad* for the class. The thrust of Appellants' objections is that it is not fair for Class Counsel to receive $1.5 million when the Revised Settlement prevents other lawyers from earning their own fee awards by suing Midland themselves for the same conduct.[3] They also claim that although the Revised Settlement expressly preserves class members' ability to individually challenge their judgments, this right is illusory because the settlement does

---

[2] The settlement has not been diluted post-remand: The second round of class notice did not come out of the settlement fund, and the class did not expand but was kept the same as in the original settlement (i.e., people sued by Midland from January 1, 2005 to March 11, 2011).

[3] *See, e.g.*, Appellants' Brief ("AB") at 36 (arguing that the class members' "most important interest" is paying a lawyer and griping that "[e]ach of the[] Named Plaintiffs already has a well-paid lawyer").

6

not provide for lawyers who assist the class members in vacating judgments to recover fees.

To be clear, irrespective of the settlement, attorneys' fees are not available for vacating a judgment. Appellants identify no statute or court rule authorizing fees when a judgment is vacated.[4] In fact, Appellants *admitted* in the district court that fees are *not* available for vacating judgments. Although their brief assumes that if not for the settlement they could use class actions to vacate judgments as a vehicle to recover fees, they cite no authority for the proposition that judgments rendered by different courts in different cases can be attacked in a class action. In fact, they cannot be. The procedure for vacating a judgment is to file a motion to vacate in the underlying case. Appellants know this, which is why they filed a federal lawsuit seeking statutory damages and fees instead of a class action to vacate judgments in state court. If the parties were to revise the settlement again to specify that class members are not precluded from filing class actions to vacate judgments, Appellants will just find another reason to object.

---

[4] In some jurisdictions and under some circumstances, a debtor who prevails on the merits may be able to recover prevailing-party fees; but these fees are not available just for vacating a judgment because vacating a judgment does not end the case, it just opens the door to litigation on the merits.

7

Moreover, this Court has already ruled that class members have a right to *individually control* the defense of their judgments. *Vassalle I*, 708 F.3d at 758. This holding — which Appellants argued for in the first appeal and took credit for in their fee motion — precludes Appellants or anyone else from usurping that right by attacking judgments en masse in a class action. The parties' decision to carve only *individual* motions and actions to vacate out of the release is consistent with, and in fact was driven by, this holding.

Appellants' few non-fee related arguments are misplaced and self-contradictory.  Their contention that individual lawsuits raising state-law claims worth a few hundred dollars would be superior to a class action appears inconsistent with their request to be appointed counsel for the nationwide class and conflicts with settled law in this circuit.[5] Their claim that it was error to approve a settlement that did not pay each class member at least as much as they could have obtained if they had sued Midland individually under state law and won likewise conflicts with this circuit's rule that a settlement cannot be rejected "simply because benefits accrued from the decree are not what a successful plaintiff would have received in a

---

[5] *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 625-26 (6th Cir. 2005).

8

fully litigated case."[6] In any event, there was a full record before the district court on the value of theoretical state-law causes of action. Appellants' counsel participated in the briefing but failed to establish the existence of any state-law theory on which a plaintiff could receive a generous award for proving that an affidavit filed in a debt-collection lawsuit purported to be based on personal knowledge when it was actually based on business records. Moreover, any class member who wished to seek more money in an individual lawsuit was free to opt out of the class.

Finally, Appellants challenge the provisions of the settlement requiring Midland to continue using proper affidavit forms and procedures, approved by a former federal judge, for at least five years. Midland does not understand why Appellants now want to dismantle the changes they originally claimed were urgently needed to protect consumers. Appellants do not criticize Midland's new procedures, but they urge this Court to vacate the stipulated injunction because the traditional requirements for granting an injunction (success on the merits and irreparable harm) were not met. These requirements do not apply to stipulated injunctions in class settlements. Class settlements commonly require defendants to change their practices.

---

[6] *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

The Tenth Circuit approved such a settlement just weeks ago.[7] Midland is aware of no cases holding that injunctive relief is impermissible in a settlement unless the court finds that the plaintiff will succeed on the merits and suffer irreparable harm. Likewise, it does not matter that the district court could not have entered the same injunction if the class had prevailed in the litigation. An injunction entered voluntarily is binding even if an injunction was not an available remedy in the underlying case.[8]

This Court held in *Vassalle I* that the district court did not abuse its discretion in finding the original settlement satisfied all seven fairness factors. The Revised Settlement is more favorable to the class than the original settlement, and the specific problem that caused the reversal in *Vassalle I* has been cured. Appellants are the last remaining objectors, and as competing class counsel their complaints are transparently self-interested. The district court's order approving the settlement should be affirmed.

---

[7] *Tennille v. W. Union Co.*, — F.3d —, 2015 WL 1948493, at *2 (10th Cir. May 1, 2015).

[8] *Local No. 9, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 518-22 (1986).

II.    **Procedural History.**

A.    **The District Court Litigation.**

The class action settlement at issue in this appeal resolves three lawsuits pending in the Northern District of Ohio. All three of these lawsuits were filed by the Murray and Murray firm ("Class Counsel"), and assigned to the Honorable David Katz.

The first-filed case, *Brent v. Midland Funding LLC*, originated as a counterclaim in a state-court debt-collection lawsuit Midland filed against Andrea Brent in 2008. Ms. Brent's class-action counterclaim alleged that Midland violated the Fair Debt Collection Practices Act ("FDCPA") and Ohio Consumer Sales Practices Act ("OCSPA") by filing affidavits in debt-collection lawsuits in which the affiant falsely claimed to have personal knowledge about the debt at issue. Complaint, Brent RE 1-1. The case was removed to the district court in June 2008. Notice of Removal, Brent RE 1.

On August 11, 2009, before any class was certified, the district court granted summary judgment for Ms. Brent individually. Summary Judgment Memorandum Opinion, Brent RE 50. In its opinion, the district court held that Midland's affidavit language was a statutory violation even though there was "no evidence that the amount of the debt, the fact that it is unpaid, or other vital account information, is false," and even though the account

11

information in the affidavit "is probably either correct or likely thought correct in good faith by Midland."[9] *Id.* at Page ID # 949.

On November 4, 2010, the district court granted Midland's motion for partial summary judgment on Ms. Brent's claim for actual damages, holding the language that violated the FDCPA and OCSPA — i.e., the attestation of personal knowledge — did not cause her any damages. Summary Judgment Memorandum Opinion, Brent RE 104, Page ID # 1765-66. In the same ruling, the court certified a class of Ohio consumers. *Id*. at Page ID # 1757.

While the *Brent* action was pending, two more putative class actions were filed against Midland, based on the same affidavit language at issue in *Brent*. *Franklin v. Midland Funding*, filed in December 2009, asserted state-law misrepresentation claims against Midland on behalf of a nationwide class. Complaint, Franklin RE 1-1. Midland successfully moved to dismiss; Ms. Franklin's appeal is pending. Memorandum Opinion Granting Motion

---

[9] Class Counsel and Appellants disagree about whether the summary-judgment ruling is void because the court lacked subject-matter jurisdiction when it was entered. Although it is unclear why this is even relevant, Midland agrees with Appellants that the summary-judgment ruling is void, as are all the other rulings that were rendered while the court lacked subject-matter jurisdiction. *See Gentek Bldg. Prods., Inc. v. Steel Peel Litig. Trust*, 491 F.3d 320, 327 (6th Cir. 2007); *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 321 (6th Cir. 2005). The district court has never addressed the legal status of the prior rulings, since the parties elected to settle *Brent* along with *Vassalle* and *Franklin*.

12

to Dismiss, Franklin RE 18; Notice of Appeal, Franklin RE 21.[10] *Vassalle v. Midland Funding*, filed in January 2011, asserted state-law claims for fraudulent misrepresentation, negligence, and unjust enrichment, on behalf of a nationwide class. Complaint, Vassalle RE 1.

### B.     The Original Settlement And Settlement-Related Litigation.

In March 2011, the district court preliminarily approved the Original Settlement in the *Brent*, *Vassalle*, and *Franklin* cases. The Original Settlement required Midland to pay $5.2 million and revise its affidavit practices under the supervision of a court-appointed Special Master. Memorandum Opinion and Judgment, Vassalle RE 160, Page ID # 1772-74.

The Original Settlement prompted an outcry from consumer advocates, legal-aid organizations, regulatory agencies, and others who were concerned about the effect the settlement would have on class members against whom Midland had obtained judgments. A coalition of consumer advocates and legal-aid firms objected to the Original Settlement, supported by the FTC, a group of state attorneys general, and several lawyers who had filed copycat actions in Washington and elsewhere. Memorandum Opinion and Judgment, Vassalle RE 160, Page ID # 1777. Among other things, the

---

[10] Ms. Franklin's appeal has been held in abeyance pending the resolution of the litigation related to the parties' settlement efforts.

13

objectors contended that the settlement was unfair because the release barred class members from seeking to vacate judgments on the ground that the affidavit was made without personal knowledge, thereby insulating Midland's judgments against attack and ensuring that Midland would be able to collect on the judgments. *E.g.*, Federal Trade Commission Brief as Amicus Curiae, Vassalle RE 55; State of New York Brief as Amicus Curiae, Vassalle RE 27; Objection of Class Members Robert Clawson, et al., Vassalle RE 25.

The fairness hearing on the Original Settlement took hours. Multiple attorneys, including representatives from several state attorneys general, argued against the settlement. *See* Transcript of Fairness Hearing, Vassalle RE 158. The district court approved the settlement over the objections, and an appeal followed.

### C.    The Special Master Proceedings.

As noted above, the Original Settlement required Midland to revise its affidavit practices under the supervision of a court-appointed Special Master. Memorandum Opinion and Judgment, Vassalle RE 160, Page ID # 1772-74. Because none of the objectors sought a stay pending appeal, on October 6, 2011, the district court appointed Richard McQuade, a former district court judge, as Special Master and ordered the proceedings to go

14

forward. Order Appointing Special Master, Vassalle RE 173; Scheduling Order, Vassalle RE 174.

Pursuant to the district court's order, Midland filed voluminous documents describing its procedures (which had changed significantly since the 2009 summary-judgment ruling), and hundreds of affidavit forms for Judge McQuade to review. Judge McQuade held two public hearings at which both he and Class Counsel questioned Midland's executives and a legal specialist at length about Midland's procedures. *See* Memorandum Opinion, Vassalle RE 281, Page ID # 5617-19; *see also* Scheduling Order, Vassalle RE 174; Special Master Findings, Vassalle RE 186; Findings of Fact and Conclusions of Law, Vassalle RE 204. There were multiple rounds of briefing involving Midland and Class Counsel both before and after the hearing. *See, e.g*., Motion for Approval of Affidavit Procedures, Vassalle RE 175; Motion for Approval of Proposed Modifications of Affidavit Language, Vassalle RE 198; Response to Motion for Approval of Proposed Modifications of Affidavit Language,  Vassalle RE 199.

All of the objectors and amici who had appeared in the district court to oppose the Original Settlement, including Appellants' counsel, received notice of the appointment of Judge McQuade as the Special Master and of the hearings. Memorandum Opinion, Vassalle RE 281, Page ID # 5617-19;

15

*see also* Scheduling Order, Vassalle RE 174; Special Master Findings, Vassalle RE 186; Findings of Fact and Conclusions of Law, Vassalle RE 204. Nobody objected to the process going forward, and no objectors appeared at any of the hearings to investigate or comment on the procedures and forms Judge McQuade was considering. Findings of Fact and Conclusions of Law, Vassalle RE 204, Page ID # 3244-45 & n.2.

On April 25, 2012, Judge McQuade issued an order setting forth requirements for the language to be included in Midland's affidavit forms, and ordered Midland to adopt these requirements into its affidavit templates. Special Master Findings, Vassalle RE 186. After that, he reviewed Midland's affidavits and issued multiple orders requiring Midland to revise specific language in some of those affidavits. Special Master Order, Vassalle RE 190; Decision and Order, Vassalle RE 193. Class Counsel reviewed the affidavits and sought additional changes that were opposed by Midland. *E.g.*, Response to Motion for Approval of Proposed Modifications to Affidavit Language, Vassalle RE 199; Reply to Response to Motion for Approval of Proposed Modifications to Affidavit Language, Vassalle RE 201; Special Master Order, Vassalle RE 203. An attorney from the National Consumer Law Center ("NCLC") — who was at the same time leading the Sixth Circuit appeal of the order approving the settlement — filed a brief

with Judge McQuade commenting on Midland's affidavits. Response to Motion for Approval of Proposed Modifications to Affidavit Language, Vassalle RE 200.

On November 16, 2012, Judge McQuade issued detailed findings of fact and conclusions of law relating to Midland's internal procedures for creating affidavits. Findings of Fact and Conclusions of Law, Vassalle RE 204. His findings described Midland's process for acquiring and validating account information from creditors and the process by which Midland incorporates the data into its computer systems. *Id*. at Page ID # 3246-47. He also described Midland's process for generating affidavits, which includes having the legal specialists who execute the affidavits personally review and check the information so the affidavit exactly matches the data in Midland's records. *Id*. at Page ID # 3248-49. Based on the revised affidavit forms submitted by Midland and his review of Midland's processes, Judge McQuade concluded that "Midland's affidavits are not based on misleading assertions of personal knowledge; instead, they are properly based on Midland's account records, which are reliable." *Id*. at Page ID # 3251.

### D.    The *Vassalle I* Appeal.

At the same time the Special Master proceedings were taking place, the objectors' appeal was pending before this Court. The objectors' main

17

contention on appeal was that the settlement was unfair because the release barred class members from filing individual motions to vacate Midland's judgments against them on the ground that the supporting affidavit was made without personal knowledge. *See, e.g.*, NCLC Br., *Vassalle I*, Case No. 11-3814, at 11, 19-20. They also argued that the settlement did not satisfy this circuit's seven-factor fairness test, set out in *International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"), because the $5.2 million settlement payment was too low compared to the substantial monetary awards class members could have obtained by suing under state-law theories. NCLC Br. at 13.

### E.    The *Vassalle I* Opinion.

This Court reversed the order approving the Original Settlement. In so doing, it accepted some of the objectors' arguments while rejecting others. First, the Court summarily rejected the objectors' contention that the settlement was unfair under the seven-factor *UAW* test. The opinion states that the district court "did *not* abuse its discretion" in determining that the settlement satisfied all seven of the fairness factors. *Vassalle I*, 708 F.3d at 755 (emphasis added). However, the Court agreed with the objectors that it was improper for the release to bar class members from individually seeking

18

to vacate Midland's judgments against them. The Court reversed on four grounds, all of which tied to the release's treatment of individual judgments.

**First**, the Court found the settlement unfair because the named plaintiffs received "preferential treatment" in the form of debt relief, while absent class members received only a share of the class fund and were precluded from challenging Midland's affidavits in court, "virtually assuring that Midland will be able to collect on these debts." *Vassalle I*, 708 F.3d at 755-56 & n.1.

**Second**, the Court held that the named plaintiffs were inadequate class representatives because the release of their debts in the settlement meant they did not share the "the unnamed class members' most important interest — the ability to use the false affidavits against Midland to contest their debts in court." *Vassalle I*, 708 F.3d at 757.

**Third**, the Court held that the settlement class did not satisfy Rule 23(b)(3)'s superiority requirement. *Vassalle I*, 708 F.3d at 757-58. Although the Court acknowledged that the "majority" of considerations weighed in favor of finding a class superior, it was troubled that the settlement class would deprive class members of their "strongest interest," which, in the Court's view, was their interest in "individually controlling the defense of Midland's state court judgments against them." *Id*. at 758. The Court also

noted in passing that "class members could have collected damages under state law claims that would exceed the value" of the settlement, and "the likelihood that many members of the class will choose to bring individual lawsuits is not remote." *Id*. No specific state laws were mentioned. *See id*.

**Fourth**, the Court found the class notice inadequate because it did not say that the release would bar class members from seeking to vacate judgments based on the faulty affidavits which, the Court reiterated, was "[t]he unnamed class members' greatest interest." *Vassalle I*, 708 F.3d at 759.

### F.    The Proceedings After Remand.

After remand, Midland and Class Counsel revised the settlement to comply with this Court's ruling. The parties understood, based on *Vassalle I*, that any revised settlement could not bar class members from individually attempting to vacate their judgments. They also understood that, under *Vassalle I*, superiority was a balancing test and therefore resolving this Court's primary concern — preserving the right of class members to individually control the defense of their judgments — would tip the scales in favor of superiority notwithstanding the Court's passing reference to state-law claims. However, since the record on potential state-law claims was scant in the first appeal, the district court ordered the parties to brief the

issue of what potential state-law remedies would theoretically be available to class members, to ensure a more complete record that would allow for a detailed analysis of the superiority issue under Rule 23.

The former objectors, Midland, and Class Counsel filed separate briefs surveying potential state-law claims. The briefing showed that the only state-law claims theoretically available were under state statutes that mirror the FDCPA, which typically provide for statutory damages of $1,000 or less in the event a violation is proven. *See* Defendants' Brief Pursuant to Status Conference Order, Vassalle RE 216, Page ID # 3317-24; Exhibit E to Defendants' Brief Pursuant to Status Conference Order, Vassalle RE 216-5 (excerpt from NCLC treatise summarizing state debt-collection statutes); Class Counsel's Analysis of the State-Law Causes of Action, Vassalle RE 225, Page ID # 3621-26 (class counsel's analysis of state-law claims). Many states have no such statutes. The objectors were not able to identify any cases in which plaintiffs received substantial cash awards under any state law for being sued with an affidavit that was made without personal knowledge.

### G.   The Revised Settlement.

The parties ultimately entered the Revised Settlement, which was preliminarily approved by the district court on November 27, 2013. Preliminary Approval Order, Vassalle RE 229.

Like the Original Settlement, the Revised Settlement requires Midland to pay $5.2 million. However, unlike the Original Settlement, the Revised Settlement does *not* insulate Midland's judgments from attack. Instead, the Revised Settlement contains a *narrower release* that *expressly preserves* class members' rights to individually challenge their judgments and defend litigation brought by Midland on any possible ground including, specifically, that the supporting affidavit was made without personal knowledge. Settlement Agreement, Vassalle RE 227-1, Page ID # 4056-57. Specifically, the release contains a carve-out that states:

> **This release contains the following exception: An individual class member may attempt to seek relief from a judgment in Midland's favor on the ground that an affidavit filed in the underlying debt-collection action was executed by a person who lacked personal knowledge of the facts stated in the affidavit**; provided, however, that the action seeking such relief may not be a class action, may not seek relief on behalf of two or more judgment-debtors, and may not seek any relief other than vacatur of the judgment and, if permissible under applicable law, return of any money paid on the judgment.

Settlement Agreement, Vassalle RE 227-1, Page ID # 4056-57 (emphasis added).

22

The agreement goes on to say, specifically, that the release does not preclude class members from defending debt-collection litigation or from challenging the admissibility of any affidavit submitted by Midland:

> To the extent that any debt-collection lawsuit filed by Midland against a Class Member has not been reduced to a judgment, **this release does NOT preclude the Class Member from raising any applicable defenses in that action, nor does it preclude the Class Member from challenging the admissibility of any affidavit submitted by Midland.**

Settlement Agreement, Vassalle RE 227-1, Page ID # 4057 (emphasis added).

Additionally, as necessitated by the *Vassalle I* opinion, the class representatives are no longer receiving debt relief. *See* Settlement Agreement, Vassalle RE 227-1, Page ID # 4051, 4058. The Revised Settlement required Midland to pay for the second round of class notice so as not to diminish the class fund. *Id*. at Page ID # 4059. The class period for the Revised Settlement is the same as the Original Settlement: January 1, 2005 through March 11, 2011. *Id*. at Page ID # 4050. This means the release does not apply to anyone sued by Midland *after* March 11, 2011. *See id*.

The settlement also bars Midland from reverting to its prior practices. As part of the settlement, Midland stipulated to an injunction requiring it to "continue to use affidavit procedures and language consistent with Judge McQuade's orders for a period of at least five (5) years, beginning on the

Effective Date."[11] Settlement Agreement, Vassalle RE 227-1, Page ID # 4054.

The settlement provided for Class Counsel to be paid in advance of final approval — but it also required all of the partners in Class Counsel's firm to sign a guarantee obligating them to pay the money back in the event the settlement was reversed or the fee award reduced by the district court or on appeal. Settlement Agreement, Vassalle RE 227-1, Page ID # 4054-55; Exhibit B to Motion for Appeal Bond, Vassalle RE 286-2, Page ID # 5665-67 (letter agreement signed by Class Counsel's equity partners guaranteeing the repayment of their fee award if the settlement was reduced or rejected by the district court or on appeal).

**H.    The Reaction to the Revised Settlement.**

In marked contrast to the Original Settlement, almost no class members objected to the Revised Settlement. Of the approximately 1.4 million class members, only thirteen individuals — less than .001% of the class — objected. Memorandum Opinion, Vassalle RE 281, Page ID # 5622. More than 133,000 filed claims. *Id*. Only 1,890 people, representing approximately 0.1% of the class, opted out. *Id*. Each class member will

---

[11] The "Effective Date" is the date on which the settlement has survived this appeal and is no longer subject to further review.

receive approximately $18.75. *Id*. The only people who appeared at the fairness hearing to oppose the settlement were Appellants' counsel.

NCLC filed a motion seeking $225,000 in fees for its contributions to the Revised Settlement. Motion for Attorneys' Fees and Costs, Vassalle RE 250. The plaintiffs from the Washington case who were parties to the first appeal did not object to the Revised Settlement, nor did the FTC or any of the consumer or legal-aid organizations that had objected to the Original Settlement. A group of state attorneys' general filed a written objection that focused primarily on their concern that the procedures approved by Judge McQuade would allow Midland to violate the law. However, after Midland and Class Counsel filed briefs which explained Judge McQuade's findings and pointed out that the processes approved by Judge McQuade were *the same or more rigorous* than the processes many state attorneys general had obtained in their own settlements with Midland the attorneys general elected not to appear at the fairness hearing to press their objections. *See* Response to Amicus Curiae Brief, Vassalle RE 260, Page ID # 4822-31; Exhibit to Response to Amicus Curiae Brief, Vassalle RE 260-1, Page ID # 4838-48; Exhibit to Response to Amicus Curiae Brief, Vassalle RE 260-2, Page ID # 4851-68.

## I.    Appellants' Counsel And His History With This Settlement.

Appellants' counsel has been trying to insert himself into this litigation since the Original Settlement. On June 1, 2011, the deadline to object to the Original Settlement, Appellants' counsel filed a motion to intervene in *Vassalle* on behalf of Pelzer, claiming that he wanted to challenge the protective order in *Brent* and access certain sealed pleadings on the *Brent* docket. *See* Motion to Intervene, Vassalle RE 20. Why he believed that intervening in *Vassalle* would enable him to challenge the protective order entered in *Brent* (a different case) was unclear. Midland offered to provide him with the sealed documents, but he ignored the offer. *See* Opposition to Motion to Intervene, Vassalle RE 52, Page ID # 527 n.2.

When the district court denied Pelzer's motion to intervene, Appellants' counsel appealed. Notice of Appeal, Vassalle RE 157. In his appeal brief, he argued that the district court should have allowed Pelzer to intervene to challenge the protective order in *Brent* (a different case), and obtain access to the sealed documents (which Midland had already offered to give him). *See* Pelzer Br., *Vassalle I*, Case No. 11-3814, at 2-3. The Pelzer appeal was consolidated with the merits appeals, and Appellants' counsel signed on to NCLC's brief. In *Vassalle I*, this Court affirmed the denial of Pelzer's intervention motion. 708 F.3d at 760.

26

In May 2013, Appellants' counsel filed a copycat lawsuit against Midland in the Eastern District of Michigan on behalf of Pelzer and a co-plaintiff, Guler Probst.[12] The Pelzer complaint quotes heavily from items on the *Brent* docket and demands damages and attorneys' fees based on the affidavit language at issue in *Brent*. *See* Exhibit to Pelzer Objections to Class Settlement, Vassalle RE 245-6. That lawsuit is stayed; no class has been certified.

After the Revised Settlement was preliminarily approved, Appellants' counsel returned to Ohio and filed another motion to intervene. This time, he asked the court to appoint him as counsel for the nationwide class instead of Mr. Murray, and to install his clients as class representatives. Motion for Rule 24(b) Intervention, Vassalle RE 246. To be clear, Appellants' counsel played *no role* in the underlying litigation, which had been going on since 2008. He also filed an objection jointly with an attorney named Tom Domonoske who sometimes serves as a named plaintiff in cases filed by Appellants' counsel.[13]

---

[12] According to the notice filed by Appellants' counsel, Probst is now deceased.

[13] *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011).

Appellants' counsel also filed a motion asking the Court to award him $35,000 from the class fund for his contributions to the Revised Settlement — the same settlement he had *objected to* days before. Motion for Attorneys' Fees, Vassalle RE 251. In his motion, Appellants' counsel took credit for winning the first appeal — not mentioning that he was only there to argue his appeal on the intervention motion, which he lost. *Id*. at Page ID # 4495-96. Contradicting his own objections, the fee motion *conceded* that the Revised Settlement cures the problems identified by this Court:

> Because of the release in the first settlement, Midland was virtually assured it would be collect on the debts. . . . **As a result of the successful appeal, class counsel re-negotiated the class settlement so that the false affidavits may be used to attack the underlying judgments. Exoneration of debts owed to Midland could be worth "hundreds or even thousands of dollars" to unnamed class members.**

*Id*. at Page ID # 4500 (emphasis added).

### J.    The Order On Appeal.

On October 14, 2014, the district court issued an order approving the Revised Settlement. Memorandum Opinion, Vassalle RE 281. Observing that this Court had found no abuse of discretion in the district court's analysis of the seven *UAW* factors in its order approving the Original Settlement, the district court incorporated by reference the sections of its prior opinion addressing those factors. *Id*. at Page ID # 5626-27. It then

turned to the question of whether the Revised Settlement cured the defects the Sixth Circuit had identified in the Original Settlement, and held that it did. Specifically, the district court held that the Revised Settlement did not grant preferential treatment to the class representatives because it no longer released their debts or awarded them an $8,000 incentive payment. *Id*. at Page ID # 5627.

With respect to class certification, the district court again incorporated the sections of its original opinion that the Sixth Circuit had affirmed. Memorandum Opinion, Vassalle RE 281, Page ID # 5627. Then, turning to the issues that had concerned this Court, the district court held that the class representatives and class counsel had vigorously pursued the class members' "most important interest" by "obtaining an exception to the class release permitting class members to use the defective affidavits to challenge Midland's judgments against them, and permitting class members to challenge the defective affidavits in ongoing debt-collection litigation." *Id*. at Page ID # 5628. By approving the class representatives and Class Counsel, the district court impliedly rejected Appellants' bid to unseat them.

The district court further held that the settlement class satisfied the superiority requirement of Rule 23(b)(3). In addition to discussing the

various factors that the *Vassalle I* opinion held weighed in favor of a class,

the district court explained:

> Importantly, the issue that caused the Sixth Circuit to find that a class action was not superior when it considered the Original Settlement is no longer present. The Sixth Circuit found superiority lacking because "[t]he interest of the unnamed class members in individually controlling the defense of Midland's state court judgments against them is their strongest interest." *Vassalle,* 708 F.3d at 758. The Revised Settlement preserves the class members' ability to "individually control" the defense of Midland's state-court judgments by excluding individual motions or actions to vacate judgments from the release, and by clarifying that the release does not prevent class members from challenging Midland's affidavits or raising any defense in ongoing debt-collection litigation.

*Id*. at Page ID # 5630.

In addition, the Court held that it had "thoroughly considered" the briefing by the settling parties and the former objectors with respect to theoretically applicable state-law claims, and had concluded that "potential recoveries available to class members are not so great as to render individual lawsuits superior to a class action." Memorandum Opinion, Vassalle RE 281, Page ID # 5630. The Court noted in particular Appellants' claim that class members could recover $50 to $150 each under a Michigan statute but held that amount to be "not sufficient to render individual actions superior to a class action." *Id*. The Court further noted that "class members who wish to assert state-law claims are free to opt out of the class." *Id*. at Page ID # 5631

(citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013)).

The district court also approved the class notice, holding that it clearly explained the release, the provisions relating to vacatur of judgments, and the potential that class members could recover more by suing individually under state law.  Memorandum Opinion, Vassalle RE 281, Page ID # 5631-32.  The district court deferred ruling on Appellants' fee motion.[14]

## SUMMARY OF ARGUMENT

The district court correctly approved the Revised Settlement. The Revised Settlement cures the defects that this Court found in the Original Settlement. There is no longer a disparity in relief between the class representatives and unnamed class members because the class representatives are not receiving debt relief and the unnamed class members will not be barred from seeking to vacate Midland's judgments against them. *See Vassalle I*, 708 F.3d at 755-56. Moreover, the factors for determining superiority under Rule 23 now tip decisively in favor of a class action because inclusion in the class will not impair the class members' right to individually control their defense of Midland's judgments. *See id.* at 758.

---

[14] The attorneys from NCLC reached an agreement with Class Counsel and dismissed their fee motion. Notice of Withdrawal, Vassalle RE 294.

And the class notice explains, in plain English, the release and provisions relating to vacatur of judgments, and it clearly informs class members of their right to opt out of the class and file an individual lawsuit. *See id.* at 759.

Appellants and their solitary amicus, AARP, contend that individual lawsuits are preferable to a class action because class members could recover more money by suing individually. However, the law in this circuit is decidedly to the contrary: consumer class actions are certifiable notwithstanding the possibility that class members could recover hundreds or even thousands of dollars each if they sued individually. *Carroll*, 399 F.3d at 625-26. The remedy for class members who wish to pursue larger recoveries by suing individually is to opt out. *In re Whirlpool*, 722 F.3d at 861.

All of Appellants' objections to the settlement fail. To the extent Appellants contend that the class members' ability to vacate judgments is illusory without a mechanism for their lawyers to recover fees, that simply is not a valid objection. With or without the settlement, fees are not recoverable for filing motions to vacate judgments. With or without the settlement, lawyers cannot earn fees filing class actions to vacate judgments because vacatur typically must be sought by motion in the court that rendered the judgment.

The district court was not obligated to order the parties to enter a settlement that paid the class more money or excluded state-law claims. This Court found no abuse of discretion in the district court's conclusion that the Original Settlement, which paid $5.2 million for a release of all claims arising from the same factual predicate as the settled claims, satisfied the seven-factor *UAW* fairness test. *Vassalle I*, 708 F.3d at 755. This is the same settlement — except that it is now better for class members and worse for Midland because it allows class members to attack Midland's judgments. Even if class members could theoretically recover more if they sued Midland under state law and won, that is not a ground to reject the settlement. *Williams*, 720 F.2d at 922.

Appellants' contention that the district court did not have the authority to enter an injunction requiring Midland to continue using the affidavit practices and forms approved by Judge McQuade is, with all due respect, based on some very misguided notions. Stipulated injunctions requiring changes to the defendants' business practices are common in class-action settlements. The court approving the settlement is not required to find the defendant liable on the merits or find irreparable harm. Those requirements only apply when an injunction is entered as an equitable remedy after litigation, or when a party seeks a preliminary injunction to preserve the

status quo. Moreover, stipulated injunctions that require a class-action defendant to change its practices pursuant to a settlement do not violate the commerce clause of the United States Constitution.

## STANDARD OF REVIEW

A district court's approval of a class settlement is discretionary and "will be overturned only by a showing of abuse of discretion." *Vassalle I*, 708 F.3d at 754. A district court's order certifying a settlement class is likewise reviewed for abuse of discretion. *Id*. at 754-55. The abuse-of-discretion standard applies to injunctive relief in a class-action settlement. *Sullivan v. DBS Invs., Inc*., 667 F.3d 273, 317 (3d Cir. 2011) ("In exercising [its] discretion, the District Court here could reasonably approve a mutually agreed-upon stipulation enjoining conduct . . . ."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150-51 (8th Cir. 1999) (applying abuse-of-discretion standard to order approving injunctive relief in a class-action settlement).

## ARGUMENT

### I.    The Revised Settlement Complies With *Vassalle I.*

#### A.    The Class Representatives Did Not Receive Preferential Treatment.

In *Vassalle I*, the Court found that the class representatives were receiving hundreds or thousands of dollars in debt relief, while the unnamed class members would receive only a pro rata share of the settlement fund and

were barred from challenging their debts in court. *Vassalle I*, 708 F.3d at 755-56. This disparity violated this circuit's rule against settlements that provide "preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Id.* at 755 (internal quotation marks and citation omitted); *see also In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (citing *Vassalle I* and explaining that the rule against "preferential treatment" ensures that the settlement benefits are fairly allocated among the named plaintiffs, the absent class members, and class counsel).

The Revised Settlement cured this disparity. The class representatives are no longer receiving debt relief. Settlement Agreement, Vassalle RE 227-1, Page ID # 4058. Moreover, the unnamed class members are no longer barred from challenging their debts in court. *Id.* at Page ID # 4057. Thus, the class representatives are in *exactly the same position* with respect to their outstanding debts and judgments as the rest of the class. Class representatives and unnamed class members who have judgments against them may attempt to vacate those judgments. Class representatives and

unnamed class members who have no judgments against them may pay their debts, dispute them, or do nothing.[15]

Moreover, although this Court declined to address the propriety of the $8,000 incentive award provided to the class representatives collectively in the Original Settlement, *see Vassalle I*, 708 F.3d at 756, the Revised Settlement out of an abundance of caution reduced the award to $1,000 per class representative, as permitted by the FDCPA. *See* 15 U.S.C. § 1692k(a). Appellants do not contend that the $1,000 incentive award renders the Revised Settlement unfair.

Appellants argue that the Revised Settlement continues to grant "preferential treatment" to Andrea Brent, because Midland dismissed its debt-collection lawsuit against her. This is wrong. The dismissal of Midland's lawsuit against Ms. Brent was not part of the settlement consideration. It was a procedural device to realign the parties so that Ms. Brent's claim against Midland could proceed in district court after the

---

[15] Appellants assert that all 1.4 million class members have outstanding judgments against them, but that is wrong. Appellants know that the class includes people with no judgments against them, as there is no judgment against Appellant Osorio. Transcript of Fairness Hearing, Vassalle RE 266, Page ID # 5205:4-7.

objectors to the Original Settlement had her lawsuit remanded to state court.[16]

## B.   The Settlement Class Satisfies The Superiority Requirement Of Rule 23(b)(3).

The district court was correct to certify the settlement class. By permitting class members to individually seek to vacate Midland's judgments against them, the Revised Settlement cures the problem that caused this Court to rule in *Vassalle I* that individual lawsuits were superior to a class action.

As held in *Vassalle I* and acknowledged by the district court, courts must balance several factors to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." *Vassalle I*, 708 F.3d at 757-58. The factors set forth in Rule 23(b)(3) are: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the existence of pending litigation concerning the same controversy; (3) the desirability of

---

[16] In the litigation over the Original Settlement, a group of objectors moved to dismiss Ms. Brent's lawsuit on the ground that it had been improperly removed. Her case was remanded to state court, where the court realigned the parties to make the case removable. The case was then removed back to district court. In *Vassalle I*, this Court agreed that the district court had subject-matter jurisdiction over all three cases at the time it approved the settlement. *Vassalle I*, 708 F.3d at 753-54.

concentrating the litigation of claims in this forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*. at 757-58.

Additionally, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Vassalle I*, 708 F.3d at 758 (internal quotation marks and citations omitted). Moreover, "[w]here many individual inquiries are necessary, a class action is not a superior form of adjudication. However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Id*. (internal quotation marks and citation omitted). Finally, if class members are unaware of the violation and unlikely to elect to bring individual lawsuits, this weighs in favor of finding a class action superior. *Id*.

The district court correctly balanced these factors and held that a class action was superior. *See* Memorandum Opinion, Vassalle RE 281, Page ID # 5629-31. As this Court previously held, there is a strong interest in resolving these claims in a single class action because most class members have limited resources. *Vassalle I*, 708 F.3d at 758. Moreover, since the threshold issue of Midland's liability is common to all class members, a class action will not be difficult to manage. *Id*. Additionally, this case is "far more

38

procedurally advanced" than the other actions bringing similar claims. *Id*. In fact, the *only* pending case asserting similar claims is the putative class action in Michigan filed by Appellants' counsel *six years* after the *Brent* lawsuit, and which is currently stayed with no class certified and a motion for judgment on the pleadings pending.

In *Vassalle I*, the Court held that these factors were outweighed by the class members' strong interest in "individually controlling the defense of Midland's state court judgments against them." *Vassalle I*, 708 F.3d at 758. As the Court explained: "The interest of the unnamed class members in individually controlling the defense of Midland's state-court judgments against them is their strongest interest: under the settlement, they are left without a crucial defense against these judgments." *Id*. (emphasis added). Under the Revised Settlement, this factor now weighs in favor of superiority because the right of class members to individually control the defense of Midland's judgments is not being compromised in the settlement. Memorandum Opinion, Vassalle RE 281, Page ID # 5630.

Appellants contend the district court should have held that individual lawsuits were superior to a class because class members could theoretically recover substantial amounts by suing Midland individually under state laws. AB at 28. Amicus AARP agrees, contending that in cases involving alleged

39

debt-collection abuses, "masses of individual suits" can result in "better damages" and greater aggregate liability for the debt collector. AARP Br. at 5-7. AARP further notes that the purpose of statutory damages and fee-shifting provisions in the FDCPA and similar statutes is to "encourage individuals to litigate against debt collection abuses." *Id.* at 7.

There is truth to the argument that, in cases involving debt-collection practices, individual lawsuits for statutory damages may provide greater relief than class actions. Plaintiffs in FDCPA actions, for example, can recover up to $1,000 in individual lawsuits — but because class recoveries are capped at the lesser of $500,000 or 1% of the defendant's net worth, members of a class will usually receive significantly less than $1,000. *See* 15 U.S.C. § 1692k(a). The benefits of individual lawsuits are especially pronounced in cases like this one where, as this Court has already observed, class members are aware of the alleged violation and "the likelihood that many members of the class will choose to bring individual lawsuits is not remote." *Vassalle I*, 708 F.3d at 758.

Nonetheless, Midland understands the law of this circuit to be that consumer class actions are certifiable notwithstanding the possibility that class members could recover hundreds or even thousands of dollars each in statutory damages if they sued individually. *E.g., Carroll*, 399 F.3d at 625-

40

26 (holding that FDCPA class is superior to individual actions even though class members' maximum recovery in a class action would be $60 each, as opposed to $1,000 each in individual lawsuits). To the extent class members wish to pursue larger damage awards by suing individually, they are free to opt out of the class. *In re Whirlpool*, 722 F.3d at 861 ("[A]ny class member who wishes to control his or her own litigation may opt out of the class . . . .").

## C.    The Class Notice Satisfies Due Process.

This Court held in *Vassalle I* that the class notice issued in connection with the Original Settlement violated due process because it did "not explain the fact that the release of claims impairs class members' ability to vacate the allegedly fraudulent judgments Midland obtained against them in state-court lawsuits." *Vassalle I*, 708 F.3d at 759.  This is no longer an issue because the Revised Settlement expressly permits class members to attempt to vacate their judgments. The terms of the Revised Settlement that relate to vacatur of judgments are explained in plain English in the class notice:

**13.    Does the settlement affect my ability to challenge a judgment Midland has against me?**

No, this settlement does not stop you from trying to vacate a judgment entered against you in a debt-collection lawsuit brought by Midland on any grounds, including that the judgment was based on an affidavit allegedly containing false information. There is no guarantee that you will succeed in vacating a judgment on that basis. The settlement stops you from filing or

participating in a class action or action where many people seek to vacate their judgments in the same lawsuit. If you want to file or participate in that type of lawsuit, you must exclude yourself from the class. There is no guarantee that such a lawsuit would succeed in vacating your judgment, or that a court would even allow such a lawsuit to go forward.

Proposed Class Notice, Vassalle RE 230-2, Page ID # 4095; Order, Vassalle RE 231.

Appellants contend that the class notice was defective because, in the question-and-answer section, the question about whether the settlement impacts what class members being sued by Midland can do to defend themselves is answered, "No, this settlement does not affect any defenses you may have." AB at 32. This is accurate. The Revised Settlement states:

To the extent that any debt-collection lawsuit filed by Midland against a Class Member has not been reduced to a judgment, **this release does NOT preclude the Class Member from raising any applicable defenses in that action, nor does it preclude the Class member from challenging the admissibility of any affidavit submitted by Midland.**

Settlement Agreement, Vassalle RE 227-1, Page ID # 4057 (emphasis added).

Appellants claim this question should have been answered with a lengthy explanation of how, in Appellants' view, the settlement prevents class members from challenging judgments by preventing lawyers like Appellants' counsel from recovering fees and from using the briefs from the

42

underlying *Brent* litigation. AB at 31-32. The answer Appellants propose would not have been responsive to the question. Class members who are currently defending debt-collection lawsuits brought by Midland by definition do not have a judgment entered against them yet, so there is no judgment for them to challenge. Moreover, the class notice was not required to include Appellants' views about the settlement. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) ("Due process does not require the notice to set forth every ground on which class members might object to the settlement.") (internal quotation marks omitted).

Additionally, the class notice was not required to inform people being sued by Midland that they would have to "pay out of pocket for an attorney" and "duplicate the efforts of class counsel . . . without the benefit of a collective or class action." AB at 32. None of this is true. Again, this section of the notice was directed to people who are defendants in *ongoing* litigation with Midland. There is no such thing as a "collective or class action" *defense* of a debt-collection lawsuit. The Revised Settlement does not require anyone to hire an attorney and certainly does not bar attorneys who represent debtors in debt-collection lawsuits from recovering any prevailing-party attorneys' fees available in their jurisdiction. Nor does it require anyone to duplicate the efforts of class counsel. Any class member who wants to seek

43

vacatur on the ground that Midland's affidavit was made without personal knowledge is free to direct the court to the summary-judgment opinion in *Brent*.

Finally, there is no merit to Appellants' contention that the notice "should have commented on the evidence previously submitted on summary judgment to the Court that will now remain under permanent seal." AB at 33. The settlement does not provide that any documents will be "under permanent seal" and, in fact, Midland offered to *stipulate to unseal* the documents nearly a year ago. *See* Response to Supplemental Brief, Vassalle RE 274, Page ID # 5469. In any event, a class notice is not required to "comment" on routine sealing orders entered in the litigation. *See Vassalle I*, 708 F.3d at 759 ("'[A]ll that the notice must do is fairly apprise members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests.'") (quoting *UAW*, 497 F.3d at 630).

## II.  Appellants' Contention That The Revised Settlement Still Prevents Class Members From Challenging Judgments Is Meritless.

Appellants contend that notwithstanding the express carve-out of individual vacatur motions from the release, the district court should have found that the Revised Settlement "effectively" bars class members from

2364607.4

attempting to vacate their judgments, and should have rejected it on that basis. All of Appellants' arguments in this regard are meritless.

**First**, Appellants contend that the agreement "functionally" deprives class members of the ability to seek to vacate judgments because it prohibits class members from seeking attorneys' fees that supposedly "would otherwise be available under state law in proceedings to set aside judgments." AB at 32. Appellants cite no state laws that award attorneys' fees for setting aside judgments. To Midland's knowledge, there are none. In any event, Appellants waived this argument because they did not raise it below. In fact, they affirmatively argued to the district court that fees are *not* available for vacating judgments. Objectors' Brief Discussing State-Law Claims, Vassalle RE 220, Page ID # 3504 (arguing that "just vacating a judgment" does not "provide a way to pay an attorney for the work"); *see also* Amicus Brief of the State of Illinois, Vassalle RE 249-1, Page ID # 4427 (state attorneys general conceding that "[a]ttorneys' fees may not be available to class members solely to vacate a default judgment").

**Second**, Appellants contend that the Revised Settlement takes away class members' right to file class actions to vacate judgments, which would allow their lawyers to collect fees under Rule 23. AB at 32. There is no such right. Appellants have cited no authority for their claim that judgments can

be vacated on a classwide basis, and in fact they cannot be. The procedure for vacating a judgment is to file a motion to vacate in the action where the judgment was rendered. Rest. 2d Judgments § 78 (detailing procedure for attacking judgments and explaining that, as a general rule, "[r]elief from a judgment must be obtained by means of a motion for that purpose in the court that rendered the judgment").

There are few cases on this issue, but the ones that do exist confirm that a court in a class action cannot review and vacate hundreds or thousands of judgments entered by other courts. *See Lingo v. State*, 138 Ohio St. 3d 427, 437-39 (2014) (holding that the court did not have power to grant classwide relief that had the effect of reviewing and partially vacating judgments against class members rendered by other courts); *Contreras v. Citibank (S.D.)*, 198 Ill. App. 3d 1059, 1065-66 (1990) (affirming order dismissing class action to vacate judgments, and holding that plaintiffs could not collaterally attack judgments in a class action; appropriate procedure was to file motions to vacate in their underlying cases); *Clark v. Leasecomm Corp.*, 2000 WL 1512373, at *8-9 (Mass. Super. Aug. 21, 2000) (holding that plaintiffs with judgments against them could not bring a class action asking another court to vacate those judgments; a motion or independent action seeking relief from judgment must be brought in the court that issued

the judgment); *cf. In re Fireside Bank Cases,* 187 Cal. App. 4th 1120, 1128-30 (2010) (affirming dismissal of claim for classwide vacatur of allegedly improper deficiency judgments).

Additionally, to vacate a default judgment the defendant must prove specific elements — typically, a valid reason for failing to answer the complaint, and a meritorious defense to the underlying claim — that are necessarily individualized and not susceptible to classwide proof. This is true in Appellants' home states of Michigan and Virginia respectively. *See, e.g.*, Mich. Ct. R. 2.603(d)(1) ("A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed."); Va. Sup. Ct. R. 3:19(d)(1) (a court may relieve a default within 21 days of its entry "after consideration of the extent and causes of defendant's delay in tendering a responsive pleading, whether service of process and actual notice of the claim were timely provided to the defendant, and the effect of the delay upon the plaintiff); *see also Moore v. Midland Credit Mgmt., Inc*., 2007 WL 4171562, at *8 (Conn. Super. Nov. 5, 2007) (denying certification of claim for classwide vacatur of judgments because these claims "require individualized proof").

47

*Vassalle I* further confirms that judgments cannot be vacated in a class action.  Permitting a class representative to challenge hundreds or thousands of  judgments on behalf of the judgment-debtors would impermissibly strip class members of their ability to individually control their own defenses of Midland's judgments. *Vassalle I*, 708 F.3d at 758 (the judgment-debtor's "strongest interest" is in "individually controlling" her own defense of the judgment). Moreover, the Court adopted this rule *at the request of Appellants* and the other objectors in the first appeal. *See* NCLC Br., *Vassalle I*, Case No. 11-3961, at 11, 13, 36. Appellants are estopped from arguing that class members actually have no interest in individually controlling their defense of Midland's judgments and, instead, should have their defenses litigated in a class action. *See In re Commonwealth Institutional Sec., Inc.,* 394 F.3d 401, 406 (6th Cir. 2005) ("Under the doctrine of judicial estoppel, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (citation and internal quotation marks omitted).

2364607.4

Appellants know judgments cannot be attacked in a class action. This is why even though they are arguing to this Court that a class action to vacate judgments is needed, they have not filed one. Nonetheless, the Court might wonder why the parties made a point of explicitly releasing class vacatur actions if such actions cannot be brought. The answer is that plaintiffs with non-viable claims file lawsuits all the time, and defending them is not free. This is why class settlements typically release all claims arising from the same factual predicate as the settled lawsuit, whether meritorious or not. *See Sullivan*, 667 F.3d at 310-11 (class could properly include members with no viable claims against the defendant; the court "need not take judicial notice of the fact that plaintiffs with non-viable claims do nonetheless commence legal action."); *see also TBK Partners, Ltd. v. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir. 1982) (class settlement may release all claims "based on the identical factual predicate" as the underlying claim in the lawsuit); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344*, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with the claims pled in the complaint.") (citing *Olden v. Gardner*, 294 F. App'x 210, 220 (6th Cir. 2008)).

**Third**, Appellants contend that class members cannot move to vacate Midland's judgments unless certain briefs that were filed under seal in *Brent* are unsealed. This argument is a rehash of Appellants' appeal of the 2011 order denying Pelzer's intervention motion, which this Court rejected. Additionally, the premise of Appellants' arguments is far-fetched. Individuals seeking to vacate judgments of a few hundred or a few thousand dollars are not going to visit the *Brent* docket, download voluminous briefs, and submit them to local courts. They will typically just fill out and submit the court's form.[17] In any event, Midland *already agreed* to unseal these documents. *See* Response to Supplemental Brief, Vassalle RE 274, Page ID # 5469.

### III.   The Parties Were Not Required To Reach A Settlement That Paid More Money Or Excluded State-Law Claims.

Appellants contend that *Vassalle I* establishes that class members' state-law claims are very valuable, and that the district court was required to reject any settlement that did not increase the size of the class fund or

---

[17] *See, e.g.*, California form SC-135 ("Notice of Motion to Vacate ("Cancel") Judgment"); Michigan form MC 99 ("Motion and Affidavit to Set Aside Default"); New York form Civ-GP-17 (Affidavit in support of order to show cause to vacate a judgment and restore to the calendar"); Virginia Form DC-434 ("Motion to Set Aside Default Judgment").

exclude potential state-law claims. This argument is based on a misreading of *Vassalle I*.

*Vassalle I* did not hold, as Appellants claim, that the $5.2 million class payment was too low to fairly compensate class members for any state-law claims being released. To the contrary, this Court held that the district court did *not* abuse its discretion in determining that each of the seven *UAW* fairness factors was satisfied. *Vassalle I*, 708 F.3d at 755. Whether a settlement fairly compensates class members for the value of their claims is part of the seven-factor *UAW* fairness test. Specifically, it is factor number four, "the likelihood of success on the merits." *Id*. at 754 ("We have held that we 'cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the settlement.'") (quoting *UAW*, 497 F.3d at 631). If $5.2 million was not too low when the release barred class members from vacating judgments, it cannot be too low now that the release is narrower and there is no such bar. *Id*.

Ignoring that the district court's analysis of the *UAW* factors has already been approved, Appellants point to this Court's statement in *Vassalle I* that class members could "collect damages under state law claims that would exceed the value of the monetary relief in the settlement." AB at

51

27. They insist this statement is the "law of the case" and should have bound the parties to either increase the settlement payment or exclude state-law claims from the release. *Id*. But this Court never said the parties could not settle for $5.2 million or that state-law claims had to be excluded from the release. This statement was not even part of the fairness analysis; it was a factor favoring individual lawsuits under Rule 23's superiority prong. *Vassalle I*, 708 F.3d at 758.

Moreover, if Appellants are contending that claims cannot be released in a class settlement unless each class member receives as much as she could have received by suing on that claim and winning, then they are fighting uphill against this circuit's settled law. Settlements are compromises of disputed claims. Class members *almost always* receive less than they would have received if they had sued individually and won. Courts "may not withhold approval simply because benefits accrued from decree are not what a successful plaintiff would have received in a fully litigated case." *Williams*, 720 F.2d at 922; *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (same, citing *Williams*); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("[T]he parties to a settlement will not be heard to complain that the relief afforded is substantially less

than what they would have received from a successful resolution after trial.").

Furthermore, the extensive record before the district court established that significant monetary awards are not available under any state laws to individuals who were sued with affidavits that claimed to be based on personal knowledge but were really based on business records. Appellants, along with former objectors' counsel from NCLC, participated in the briefing on this issue in the district court. *See* Defendants' Brief Pursuant to Status Conference Order, Vassalle RE 216; Objectors' Response Regarding State-Law Claims, Vassalle RE 220; Reply Regarding State-Law Claims, Vassalle RE 224; Class Counsel's Analysis of the State-Law Causes of Action, Vassalle RE 225. The briefing established that, at most, class members in states with statutes that mirror the FDCPA might be able to recover statutory damages — but these statutes typically provide for awards of $1,000 or less, can be narrower than the FDCPA, and may limit standing to individuals with actual damages. *See* Defendants' Brief Pursuant to Status Conference Order, Vassalle RE 216, Page ID # 3317-24 (surveying potential state-law claims); Exhibit E to Defendants' Brief Pursuant to Status Conference Order, Vassalle RE 216-5 (excerpt from NCLC treatise summarizing state debt-collection statutes); Class Counsel's Analysis of the

State-Law Causes of Action, Vassalle RE 225, Page ID # 3621-26 (class counsel's analysis of state-law claims); Exhibit to Objectors' Response Regarding State-Law Claims, Vassalle RE 220-3 (appendix to NCLC brief summarizing debt-collection statutes in eight states which provide for statutory damages; all but one limit recoveries to $1,000 or less).

The two statutes cited by Appellants prove the point. The Michigan statutes only allow the plaintiff to recover a *maximum* of $50 to $150. *See* Mich. Comp. Laws § 445.257(2); Mich. Comp. Laws § 339.916(2); *see also* Ex. E to Defs.' Br. Pursuant to Status Conference Order, Vassalle RE 216-5, Page ID # 3477 (NCLC debt-collection treatise excerpt summarizing Michigan statutes and noting that they provide for recoveries of $50-$150).[18] And the Virginia statute is not even applicable at all because it regulates the sale of goods, not debt collection. *See* Va. Code § 59.1-197 (The VCPA was passed "to promote fair and ethical standards of dealings between suppliers and the consuming public."); Va. Code § 59.1-198 (defining transactions regulated by the statute, none of which involve debt collection); Va. Code § 59.1-200 (listing "Prohibited Practices," none of which are applicable to debt collection); s*ee also* Ex. E to Defs.' Br. Pursuant to Status Conference

---

[18] Additionally, Mich. Comp. Laws § 445.257(2), does not apply to debt collectors and therefore would not supply a cause of action for any class member in this case. Mich. Comp. Laws § 445.251.

Order, Vassalle RE 216-5, Page ID # 3482 (NCLC debt-collection treatise excerpt indicating Virginia has no civil statute regulating debt collectors).

Appellants' argument also fails to take into account that plaintiffs do not always win. Even in the states where a claim could be brought, the plaintiff would have to establish a violation in order to recover. This is unlikely given the developing consensus that misleading statements about the source of the affiant's knowledge about the debt do not violate the FDCPA or equivalent state laws. *See, e.g., Clark v. Main Street Acquisition Corp.*, 553 F. App'x 510, 516 (6th Cir. 2014) ("The least sophisticated consumer understands that lenders and debt collectors by necessity have to rely on business records that they may not have personally created."); *Shetiwy v. Midland Credit Mgmt., Inc.*, 15 F. Supp. 3d 437, 447 (S.D.N.Y. 2014) (dismissing FDCPA complaint alleging that debt buyers "filed complaints and affidavits without 'personal knowledge' of the underlying debt" for failure to state a claim because "court filings that do not 'mislead a putative-debtor as to the nature and legal status of the underlying debt, or . . . impede a consumer's ability to respond to or dispute collection' do not violate the FDCPA"); *Janson v. Katharyn B. Davis, LLC*, No. 14-709, 2014 WL 7027352 at *6 (E.D. Mo. Dec. 11, 2014) (dismissing FDCPA claim because the plaintiff "does not allege that the affidavit was false in any way

other than that [the attorney] did not have first-hand knowledge of the facts to which he was attesting"); *Albritton v. Sessoms & Rogers, P.A*., No. 09-321, 2010 WL 3063639, at *2-7 (E.D.N.C. Aug. 3, 2010) (allegation that affiant swore to undisputedly accurate debt information without first reviewing the account statement was insufficient to state an FDCPA claim); *Gargiulo v. Forster & Garbus Esqs*., 651 F. Supp. 2d 188, 191 (S.D.N.Y. 2009) (allegation that law firm associate did not review the referenced documents prior to signing affidavit in support of debt-collection complaint did not state an FDCPA claim); *Manlapaz v. Unifund CCR Partners,* No. 08-6524, 2009 WL 3015166, *5 (N.D. Ill. Sept. 15, 2009) ("[T]he falsity of [the affiant's] statement that she had personal knowledge of facts that she gleaned from a review of business records is a technicality which would not mislead the unsophisticated consumer."); *Goray v. Unifund CCR Partners*, No. 06-00214, 2007 WL 4260017, *9 (D. Haw. Dec. 4, 2007) ("The fact that [the affiant] never saw the complaint and did not personally review the documents to verify the amount owed by Plaintiff does not constitute a violation of the FDCPA"); *see also O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 943-44 (7th Cir. 2011) (false statements to a state court do not violate the FDCPA because judges are not "consumers"), *cert. denied*, 132 S. Ct. 1141 (2012).

Finally, class members had the right to opt out of the class and were free to do so if they wished to seek damages under state law. *See Whirlpool*, 722 F.3d at 861; *see also* National Consumer Law Center, Fair Debt Collection, 379-80 (7th ed. 2011) ("Although a class member may receive less than if an individual action had been brought, the ability to opt out of the class action and pursue an individual claim protects the individual's rights."). The class notice made this option clear: "If you exclude yourself from the Class, you may be able to bring a lawsuit under state or federal law that could entitle you to more than the amount you will receive if you elect to receive your share of the Settlement Fund." Proposed Class Notice, Vassalle RE 230-2, Page ID # 4094.

## IV. Appellants' Complaints About The Stipulated Injunction Are Meritless.

Appellants devote a substantial portion of their brief to arguing that this Court should vacate the portion of the settlement requiring Midland to comply with the affidavit procedures approved by Judge McQuade. The stipulated injunction sets forth a rigorous, mandatory process for Midland to generate, check, and sign affidavits that when followed generates valid business records affidavits that contain no false statements. Findings of Fact and Conclusions of Law, Vassalle RE 204. To the extent there was concern that Judge McQuade would not actually prohibit Midland from creating false

57

affidavits, that concern proved unfounded. *See id*. Midland does not understand why Appellants want Midland to return to its prior practices.

As a practical matter, Midland could not revert to its prior practices even if Appellants succeeded in dismantling the injunction, since Midland is subject to consent decrees with state attorneys' general that require procedures virtually identical to those approved by Judge McQuade. *See, e.g*., Exhibit to Response to Amicus Curiae Brief, Vassalle RE 260-1, Page ID # 4838-48 (West Virginia consent decree requires Midland's legal specialists to review the affidavits, confirm that all of the data points in the affidavit accurately reflect data in Midland's account records, review any proposed attachments to confirm that true and correct copies of the referenced documents are attached, and sign the affidavits in the presence of a notary); Exhibit to Response to Amicus Curiae Brief, Vassalle RE 260-2, Page ID # 4851-68 (Minnesota consent decree requiring Midland's legal specialists to (i) read and understand all information in the affidavit; (ii) review any attachments and compare them to the account records to confirm they are true and correct copies; (iii) confirm the affidavits only contain statements based on personal knowledge and identify the basis of that knowledge; and (iv) sign the affidavits in the presence of a notary).

Midland's recent settlement with the New York attorney general contains similar requirements.[19]

In any event, all of Appellants' arguments about the stipulated injunction are legally incorrect. The district court was not required to make findings that Midland violated the law in order to approve the stipulated injunction. That is only required when a court enters an injunction as a remedy for an adjudicated violation of law — i.e., when a plaintiff sues for injunctive relief and wins. It is very common in a class settlement for the defendant to voluntarily agree to change its practices. *See, e.g*., *Tennille*, 2015 WL 1948493, at *2; *In re Se. Milk Antitrust Litig*., No. 08-1000, 2012 WL 2236692, at *1 (E.D. Tenn. June 15, 2012) (approving class settlement requiring defendant to change its practices); *In re Unumprovident Corp*., No. 02-386, 2010 WL 289179, at *1 (E.D. Tenn. Jan. 20, 2010) (same). Midland is not aware of any cases holding that a court cannot issue a stipulated order requiring a class-action defendant to change its business practices unless the traditional requirements for injunctive relief (success on the merits and irreparable harm) are proven. Those requirements make no sense in the settlement context.

---

[19] Press Release, http://www.ag.ny.gov/press-release/ag-schneiderman-obtains-settlement-major-debt-buyer-who-filed-thousands-time-barred, last visited May 11, 2015.

The stipulated injunction is likewise not an improper attempt by the district court to apply the OCSPA beyond the borders of Ohio. The stipulated injunction was not entered to remedy a violation of the OCSPA; it was entered voluntarily pursuant to the Revised Settlement. A district court has the power to enter an injunction pursuant to a settlement even if it could not have entered that same injunction in connection with a judgment on the merits. *Int'l Ass'n of Firefighters*, 478 U.S. at 518-22; *see also In re Consol. 'Non-Filing Ins.' Fee Litig.*, 431 F. App'x 835, 844-45 (11th Cir. 2011) (a consent decree entered as part of class settlement of Truth in Lending Act ("TILA") claims was valid and enforceable even though injunctive relief is not available as a remedy under TILA).[20] The stipulated injunction does not violate the commerce clause either, since it is not a state statute that purports to regulate interstate commerce. *See Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 644 (6th Cir. 2010) (explaining commerce clause).

It is not clear where Appellants think attacking the injunction gets them. If their purpose is to prevent the Court from considering it in the fairness analysis, they are misguided. The settlement would be fair even

---

[20] Appellants quibble that the injunction could be characterized as a consent decree, AB at 30, but that does not matter. The effect is the same. *See Williams*, 720 F.2d at 920 ("Once approved, the prospective provisions of the consent decree operate as an injunction.").

2364607.4

Case: 14-4156     Document: 32     Filed: 05/21/2015     Page: 69

without it. In *Vassalle I* this Court approved the district court's conclusion that the seven fairness factors were satisfied even though the Court considered the injunction (which at the time merely required Midland to have its procedures reviewed and approved by a Special Master) to be of "little value." *Vassalle I*, 708 F.3d at 755-56. So ignoring the injunction would not change the fact that the Revised Settlement is otherwise fair.

## V. The District Court Was Not Required To Mention The State Attorneys General In The Order Approving The Settlement.

Appellants argue that the district court abused its discretion by failing to adequately consider their arguments as well as the arguments made by the state attorneys general. As a preliminary matter, a district court evaluating a class settlement is not required to discuss every argument made by objectors in its opinion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (rejecting argument that district court abused its discretion by approving a class settlement in an "almost conclusory" ruling, and explaining that where the record is fully developed and the salient issues were thoroughly briefed, the district court ruling need not be detailed); *Tuggle v. Seabold*, 806 F.2d 87, 92-93 (6th Cir. 1986) (holding that a district court need not articulate its reasons for rejecting arguments — a statement that it has reviewed the record and arguments presented is sufficient).

61

2364607.4

In any event, the district court's 22-page opinion addressed all of the relevant arguments in ample depth. The district court was not required to mention the attorneys general by name. The state attorneys general were primarily concerned that Judge McQuade would authorize affidavits that violate the law and force state courts to accept those affidavits. *See* Amicus Brief of the State of Illinois, Vassalle RE 249-1, Page ID # 4418, 4422-25, 4430-44. After Midland and Class Counsel filed separate briefs explaining that the procedures approved by Judge McQuade comply with applicable law and do not bind state courts to accept the affidavits into evidence, *see* Plaintiffs' Response to Amicus Brief, Vassalle RE 253; Defendants' Response to Amicus Brief, Vassalle RE 260, the state attorneys general elected not to appear at the hearing to press this issue. Appellants have not challenged the substance of Judge McQuade's findings in this appeal.[21] The remaining arguments made by the state attorneys general echoed Appellants' arguments and were addressed in the opinion. *E.g.*, Memorandum Opinion, Vassalle RE 281, Page ID # 5626 (addressing argument that the monetary

---

[21] Appellants waived any challenge to the substance of Judge McQuade's orders. Federal Rule of Appellate Procedure 28(a) requires that the appellant's opening brief include an argument containing "appellant's contentions and the reasons for them." Fed. R. App. P. 28(a); *see also Dog Pound, LLC v. City of Monroe,* 558 F. App'x 589, 594 (6th Cir. 2014) ("[T]he appellant is required to articulate an argument in support of its claim in its opening brief in order to preserve that claim on appeal.").

payment is too low); *id*. at Page ID # 5630 (addressing argument that the availability of individual damages under state law precludes class certification).

## **CONCLUSION**

The Revised Settlement cured the defects identified by this Court. The new release is so narrow that it subjects Midland to potentially endless litigation by individual class members challenging judgments, yet Midland is still paying $5.2 million to settle. The only people still dissatisfied are competing lawyers who want to wrest the case away from class counsel so that they can be the ones who get paid. This litigation is already nearly eight years old. The class period closed four years ago. This court should allow the parties to finally resolve this case. The district court should be affirmed.

2364607.4

Respectfully Submitted:

/s/ Amy M. Gallegos
Richard L. Stone
Amy M. Gallegos
Jenner & Block LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Tel: (213) 239-2208
agallegos@jenner.com
rstone@jenner.com

Theodore W. Seitz
Dykema Gossett PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
Tele:  (517) 374-9149
tseitz@dykema.com

Counsel for Midland Funding, LLC,
Midland Credit Management, Inc., and
Encore Capital Group, Inc.

64

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 13,565 words, including footnotes and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Sixth Circuit Rule 32(b)(1). This brief was prepared in Microsoft Word 2007 using 14-point Times New Roman.

Dated: May 21, 2015                                    <u>/s/ Amy M. Gallegos</u>

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic system on May 21, 2015.

Dated: May 21, 2015                                   /s/ Amy M. Gallegos

66

## APPELLEES' DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| Record Citations to *Midland Funding LLC v. Brent, et al.* United States District Court, Northern District of Ohio Case No. 08-cv-01434 | | | |
|---|---|---|---|
| **Designation of Entry** | **Date Filed** | **Record Entry Number** | **Page ID Number** |
| Notice of Removal | 6/13/08 | 1 | 1-3 |
| Complaint | 6/13/08 | 1-1 | 4-36 |
| Summary Judgment Memorandum Opinion | 8/11/09 | 50 | 938-966 |
| Summary Judgment Memorandum Opinion | 11/04/10 | 104 | 1754-1766 |

| Record Citations to *Franklin v. Midland Funding LLC*, Case No. 3:10-cv-0091 United States District Court, Northern District of Ohio Case No. 10-cv-0091 | | | |
|---|---|---|---|
| **Designation of Entry** | **Date Filed** | **Record Entry Number** | **Page ID Number** |
| Complaint | 1/15/10 | 1-1 | 8-22 |
| Memorandum Opinion Granting Motion to Dismiss | 10/06/10 | 18 | 351-356 |
| Notice of Appeal | 10/22/10 | 21 | 362 |

67

2364607.4

**Record Citations to *Vassalle, et al. v. Midland Funding, et al.***
**United States District Court, Northern District of Ohio**
**Case No. 11-cv-00096**

| Designation of Entry | Date Filed | Record Entry Number | Page ID Number |
|---|---|---|---|
| Complaint | 1/17/11 | 1 | 1-14 |
| Motion to Intervene | 6/01/11 | 20 | 90-101 |
| Objection of Class Members Robert Clawson, et al. | 6/01/11 | 25 | 130-159 |
| State of New York Brief as Amicus Curiae | 6/01/11 | 27 | 250-272 |
| Opposition to Motion to Intervene | 6/20/11 | 52 | 521-528 |
| Federal Trade Commission Brief as Amicus Curiae | 6/21/11 | 55 | 596-620 |
| Notice of Appeal | 7/21/11 | 157 | 1641-1642 |
| Transcript of Fairness Hearing | 7/28/11 | 158 | 1643-1763 |
| Memorandum Opinion and Judgment | 8/12/11 | 160 | 1765-1799 |
| Order Appointing Special Master | 10/06/11 | 173 | 1821-1826 |
| Scheduling Order | 1/19/12 | 174 | 1827 |
| Motion for Approval of Affidavit Procedures | 1/25/12 | 175 | 1828-1830 |
| Special Master Findings | 4/25/12 | 186 | 3015-3021 |
| Special Master Order | 7/05/12 | 190 | 3142-3146 |
| Decision and Order | 8/03/12 | 193 | 3181-3183 |
| Motion for Approval of Proposed Modifications of Affidavit Language | 8/28/12 | 198 | 3205-3210 |

| | | | |
|---|---|---|---|
| Response to Motion for Approval of Proposed Modifications of Affidavit Language | 9/06/12 | 199 | 3211-3216 |
| Response to Motion for Approval of Proposed Modifications to Affidavit Language | 9/11/12 | 200 | 3217-3221 |
| Reply to Response to Motion for Approval of Proposed Modifications to Affidavit Language | 9/14/12 | 201 | 3222-3225 |
| Special Master Order | 10/02/12 | 203 | 3235-3240 |
| Findings of Fact and Conclusions of Law | 11/16/12 | 204 | 3241-3251 |
| Defendants' Brief Pursuant to Status Conference Order | 9/13/13 | 216 | 3306-3327 |
| Exhibit E to Defendants' Brief Pursuant to Status Conference Order | 9/13/13 | 216-5 | 3470-3482 |
| Objectors' Brief Discussing State-Law Claims | 10/13/13 | 220 | 3490-3508 |
| Exhibit to Objectors' Response Regarding State-Law Claims | 10/13/13 | 220-3 | 3518-3520 |
| Reply Regarding State-Law Claims | 10/18/13 | 224 | 3545-3564 |
| Class Counsel's Analysis of the State-Law Causes of Action | 11/07/13 | 225 | 3617-3634 |
| Settlement Agreement | 11/22/13 | 227-1 | 4044-4065 |
| Preliminary Approval Order | 11/27/13 | 229 | 4080-4082 |
| Proposed Class Notice | 12/19/13 | 230-2 | 4092-4097 |
| Order | 12/23/13 | 231 | 4108 |
| Exhibit to Pelzer Objections to Class Settlement | 4/14/14 | 245-6 | 4302-4324 |

| Motion for Rule 24(b) Intervention | 4/14/14 | 246 | 4345-4353 |
|---|---|---|---|
| Amicus Brief of the State of Illinois | 4/21/14 | 249-1 | 4414-4447 |
| Motion for Attorneys' Fees and Costs | 4/24/14 | 250 | 4450-4467 |
| Motion for Attorneys' Fees | 4/26/14 | 251 | 4492-4506 |
| Plaintiffs' Response to Amicus Brief | 5/07/14 | 253 | 4603-4607 |
| Response to Amicus Curiae Brief | 5/07/14 | 260 | 4812-4836 |
| Exhibit to Response to Amicus Curiae Brief | 5/07/14 | 260-1 | 4837-4849 |
| Exhibit to Response to Amicus Curiae Brief | 5/07/14 | 260-2 | 4850-4868 |
| Transcript of Fairness Hearing | 5/21/14 | 266 | 5186-5236 |
| Response to Supplemental Brief | 6/20/14 | 274 | 5467-5476 |
| Memorandum Opinion | 10/14/14 | 281 | 5613-5634 |
| Judgment Entry | 10/14/14 | 282 | 5635-5639 |
| Notice of Appeal | 11/12/14 | 283 | 5640-5642 |
| Exhibit B to Motion for Appeal Bond | 12/19/14 | 286-2 | 5665-5667 |
| Notice of Withdrawal | 3/05/15 | 294 | 5748-5749 |

2364607.4